THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY STARKS, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TRAVIS MILLER, Defendant-Appellant. Fourth District   Nos. 4—83—0144, 4—83—0145 cons.

Opinion filed November 3, 1983.—Rehearing denied December 7, 1983.

22

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's

Office, of Springfield, for appellant Terry Starks.

Jerome Rotenberg, of Chicago, for appellant Travis Miller.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the circuit court of Livingston county, defendants, Terry Starks and Travis Miller, were convicted on January 12, 1983, of a violation of section 3—6—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—4(a)). On February 16, 1983, the court sentenced them to terms of 12 and 11 years' imprisonment, respectively. Each sentence was ordered to be consecutive to sentences each defendant was then serving. Separate notices of appeal were filed but the cases have been consolidated in this court.

Defendant Miller maintains that the indictment was defective. They both contend that: (1) The trial court erred in allowing correctional officers to give testimony identifying defendants as persons the officers had seen on a videotape taken during the occurrence giving rise to the charges; (2) the prosecutor's closing argument was prejudicially improper; and (3) the court erred in sentencing.

The indictment returned on October 6, 1982, charged of each defendant that on July 29, 1982:

> "being a person committed to the Department of Corrections, he caused or participated in the destruction of property during a disturbance at the Pontiac Correctional Center by knowingly tearing conduit off pipes and damaging other property, of the State of Illinois, Pontiac Correctional Center,"

in violation of section 3—6—4(a) of the Unified Code of Corrections. Relevant portions of that section state:

> "A committed person *** *while participating in any disturbance, demonstration or riot*, causes, directs or participates in the destruction of any property is guilty of a Class 2 felony." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—4(a).)

Thus, the charges did not state in the language of the statute that the defendants were "participating in [a] disturbance" while they participated in destruction of the property. Defendants maintain that, accordingly, the indictment was fatally defective.

■ Defendants' contentions concerning the sufficiency of the indictment are viewed in the posture of the failure of the defense to raise the issue in the trial court. When attack is made upon a charge at this time, the charge "is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.) In *Pujoue*, a complaint purporting to charge unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, pars. 24—1(a)(4), 24—1(a)(10)) failed to make the required allegation that the weapon involved was either concealed or loaded. The supreme court, nevertheless, deemed the charge sufficient to enable preparation of a defense and to protect the defendant from double jeopardy.

■ We need not decide whether any defect in the charges here would constitute error, if timely raised, because any claimed defect was no more prejudicial to defendants here than was the defect in *Pujoue* which failed to apprise the defendant that the State claimed his weapon was concealed or loaded. Here, as in *Pujoue*, a resulting conviction could be pleaded in bar of subsequent prosecution. The defect in the charge did not require reversal.

The evidence undisputedly showed that on July 29, 1982, defendants were inmates at the Pontiac Correctional Center and that a riot occurred at that institution on that date apparently arising from a dispute between rival gangs. An inmate was killed during the course of the riot. The evidence was also undisputed that a telephone communication conduit was torn from a wall during the episode. One inmate testified that he saw defendant Miller tear portions of the conduit off of a wall and pass it to another inmate. This witness was impeached by evidence that he had previously told an investigator that he knew nothing of the incident and then told of seeing Miller's conduct only after receiving favorable treatment from the administrative officer of the center. All of the rest of the testimony tying either defendant to the offenses charged came from the testimony of correction officers who had viewed a videotape of the occurrence made by cameras which had been trained on the area where the riot occurred. This testimony identified Miller as a person shown in the tapes to be tearing a portion of a conduit from a wall and Starks as a person shown there to have passed the torn conduit to other inmates.

■ Defendants argue that the testimony of the guards was expert testimony by persons not experts and on a subject upon which the jury was fully capable of making its own determination by viewing

the tapes after they were admitted into evidence. (*People v. Dixon* (1980), 87 Ill. App. 3d 814, 410 N.E.2d 252.) However, we do not deem the testimony to have been expert testimony but rather lay testimony of persons familiar with the defendants, identifying persons shown on tapes as defendants. Although the witnesses did not all know the names of the defendants, all testified to having seen the defendants they identified on numerous occasions prior to the event. Some of them had to look at mug shots containing the defendants names in order to learn the names of the defendants.

The United States Circuit Courts of Appeal have considered the problems of the introduction of testimony of lay witnesses identifying the accused as being a person depicted in pictures. At issue has been the application of Rule 701 of the Federal Rules of Evidence, which states:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

In *United States v. Calhoun* (6th Cir. 1976), 544 F.2d 291, the court stated that testimony of a defendant's parole officer that the defendant was a person shown in a picture taken at the time of the offense would have been helpful because the appearance of the defendant had changed between the time of the offense and trial. The court stated that the evidence "teases the outer limits" of Federal Rule 701. Nevertheless, the court awarded a new trial because of the prejudicial effect of showing that the defendant was subject to parole.

In *United States v. Butcher* (9th Cir. 1977), 557 F.2d 666, testimony similar to that given in *Calhoun* was given by the defendant's probation officer and two law enforcement officers. The court held that the trial court did not abuse its discretion in considering the probative value of the evidence to outweigh the prejudice arising from the inference that defendant had committed other crimes. The court was concerned with whether the testimony invaded the province of the jury because, unlike in *Calhoun*, the appearance of the defendant at trial was more similar to that at the time of the crime than that when the witnesses last saw the defendant before the crime. The court concluded that the admission of the evidence was not error of constitutional dimensions. See also *United States v. Barrett* (9th Cir. 1983), 703 F.2d 1076; *United States v. Borrelli* (10th Cir. 1980), 621 F.2d 1092.

In *People v. Mixon* (1982), 129 Cal. App. 3d 118, 180 Cal. Rptr.

772, California law, as first established in *People v. Perry* (1976), 60 Cal. App. 3d 608, 131 Cal. Rptr. 629, was described as requiring:

"two predicates for the admissibility of lay opinion testimony as to the identity of persons depicted in surveillance photographs: (1) that the witness testify from personal knowledge of the defendant's appearance at or before the time the photo was taken; and (2) that the testimony aid the trier of fact in determining the crucial identity issue." (129 Cal. App. 3d 118, 128, 180 Cal. Rptr. 772, 777; see also *State v. Jamison* (1980), 93 Wash. 2d 794, 800, 613 P.2d 776, 779.)

*Mixon* and *Jamison* both indicate that the second predicate can be satisfied whenever the surveillance photograph is not a clear depiction of the subject or the defendant's appearance at the time of trial is different from his appearance at the time of the crime.

Here, there was no prejudice from having correctional officers testify because the jury would otherwise have been fully aware that the defendants were convicted criminals. The officers were familiar generally with the defendants' appearances at the time of the occurrence but there was no indication that their appearances had changed by time of trial. The indications of the *Butcher* opinion was that the court there would have upheld the admission of the evidence under these circumstances. However, in *United States v. Jackson* (7th Cir. 1982), 688 F.2d 1121, 1125, the court implied that testimony of the nature here should be excluded when not necessary because the accused's appearance had changed between time of the offense and time of trial.

In this case there is an additional element referred to in *Mixon* but not involved in the Federal cases. The tape was such that the persons stated to be defendants were somewhat in the background of the picture, making it more difficult for jurors to make identification. This case is also different than those cases in which still pictures were used. Here the scene shown was a moving one. One familiar with the defendants' mannerisms and body movements would be better able to determine whether either defendant was shown in the videotape than would a juror who had only seen defendants in the court room.

■ We conclude that the testimony here was rationally based upon the witnesses' personal knowledge of the defendants before the occurrence and their perception of what they saw in the videotapes. It was an aid to the jury in resolving the issue of identification and did not invade the province of the jury. We hold the evidence to be admissible. We caution, however, that admission of such testimony would permit similar testimony on behalf of defendants. (See *United States*

*v. Jackson* (7th Cir. 1982), 688 F.2d 1121, 1126 (Shador, J., dissenting).) Trial judges should limit the amount of such cumulative evidence.

▮ Objection was made that the procedure in which the witnesses viewed mug shots was unduly suggestive because of some evidence that the officers talked among themselves while viewing those pictures. However, the procedure was only for the purpose of obtaining the name of the persons the officers had in mind and not for the purpose of determining whether the persons the officers had in mind were the persons shown on the videotape. The procedure was not erroneous.

We need not comment on defendants' claims of error in the prosecutor's closing argument. Clearly, none of the argument amounted to plain error. If any lesser error occurred it was waived by the failure of defendants to raise the issue in the trial court. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

The offense of which the defendants were convicted was a Class 2 felony, punishable by a term of from two to seven years' imprisonment. (Ill. Rev. Stat. 1981, ch. 38, par. 1003—6—4(a).) The trial court found each of them to be subject to extended terms of imprisonment (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1)) of 12 years for Starks and 11 years for Miller. In making a comprehensive explanation of the sentence imposed, the trial court mentioned that it found the conduct of defendants to have caused serious harm to the convict who was killed. Defendant Miller maintains that imposition of an extended term was error. Both contend that the finding that the defendants' conduct had caused harm to the convict who was killed was not supported by the evidence and was prejudicial error.

The consecutive sentences were imposed because each defendant had, within the past 10 years, been convicted in this State of a greater class felony upon charges separately brought and tried and arising out of different acts. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) Miller's prior conviction was for armed robbery and that of Starks was for murder. Defendant Miller maintains that the enhancement was improper because the reason they were incarcerated was because of those offenses and thus those offenses should be considered as an element of the offense of which their convictions are on appeal. He seeks to draw analogy to the decisions in *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627, and *People v. Gresham* (1982), 104 Ill. App. 3d 81, 432 N.E.2d 654. In *Haron*, the court held that the possession of a weapon by the accused cannot both raise what would otherwise be a misdemeanor to a felony and also serve as the basis for con-

victing the defendant of armed violence. Similarly, in *Gresham* the court held that the same prior conviction may not enhance what would otherwise be a misdemeanor charge to a felony and also serve as the basis of imposing an extended term sentence for that felony. Miller also stresses that in *People v. Allen* (1981), 97 Ill. App. 3d 38, 422 N.E.2d 254, we held that in sentencing the trial court erred in considering, as an aggravating factor (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)), that 'the defendant's conduct caused or threatened serious harm. We concluded there that the harm threatened was no greater than that inherently threatened in any burglary and that the legislature did not intend to enhance sentences for conduct inherent in the principal offense.

The foregoing cases are not analogous to the instant case. In *Haron*, the very same conduct was used to raise the offense for which the defendant was convicted from a misdemeanor to a felony and then to armed violence. In *Gresham*, the offense was raised to a felony and then enhanced merely because of the same conviction. Here, the defendants had to have been committed to the Department of Corrections to have been guilty of the offense charged and would not have been committed but for the offenses used to enhance. However, here, there is no predicate offense which rose from a lesser offense merely because defendants had committed the prior offenses used to enhance. Miller contends that either the offenses of criminal damage to property (Ill. Rev. Stat. 1981, ch. 38, par. 21—1(a)) or criminal damage to State-supported property (Ill. Rev. Stat. 1981, ch. 38, par. 21—4(a)) could constitute that predicate offense. But the offense charged here requires not only that the defendants be committed to the Department but that their conduct occur during a disturbance, an element which was not part of the offenses used to enhance.

The case also differs from *Allen*. Even if being committed to the Department be deemed the same as the commission of an offense that is an element of the crime, the commission of a crime severe enough to be used to enhance the sentence is not required in order for a person to be committed. That could result from a misdemeanor or a lesser felony. Thus, the conduct forming the basis for the enhancement was not inherent in the offense for which the defendants had been convicted as was the case in *Allen*.

■ The record does not support the trial court's finding that the defendants' conduct caused serious physical harm to the inmate who was killed in that the evidence did not show a connection between the portion of the conduit torn by Miller and passed by Starks and the wounds suffered by the inmate. However, the court's finding that the

defendants intended that the torn material be used as a weapon could have properly been inferred from the evidence. The complained-of finding was but one of many aggravating factors considered. No contention was made at sentencing that the court was considering improper aggravating factors. No reversible error occurred.

For the reasons stated, we affirm the convictions and the sentences.

Affirmed.

TRAPP and MILLER, JJ., concur.