Filed 10/22/08          NO. 4-07-0565

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| LEONARD E. STUMP, | ) | No. 07CF20 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi Ladd, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE APPLETON delivered the opinion of the court:

In May 2007, a jury convicted defendant, Leonard E. Stump, of unlawful possession with intent to deliver less than 1 gram of heroin (720 ILCS 570/401(d) (West 2006)), a Class 2 felony. The trial court sentenced defendant to 18 years in prison. Defendant appeals, claiming the court erred in failing to question the jurors during voir dire in compliance with Illinois Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) regarding the jurors' under-standing of the four basic constitutional guarantees afforded criminal defendants at trial. He also appeals his sentence as being excessive. We affirm.

I. BACKGROUND

On January 4, 2007, the State charged defendant with (1) unlawful possession with intent to deliver between 1 and 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2006)), a Class 1 felony (count I), and (2) unlawful possession with intent to deliver less than 1 gram of heroin (720 ILCS 570/401(d) (West 2006)), a Class

2 felony (count II).

On May 7, 2007, defendant's jury trial began. The State informed the trial court that it was dismissing count I and proceeding against defendant only on count II. After addressing preliminary matters and conducting jury selection, the court recessed the trial for the day. Portions of voir dire are relevant to this disposition and will be discussed in the analysis below.

On May 8, 2007, the State presented the testimony of Matthew Quinley and Jay Loschen, Urbana police officers, who testified that on January 3, 2007, they had received "information" that a pickup truck would soon arrive at a grocery store with heroin inside. The officers spotted a truck matching the description provided by the informant and initiated a stop. Officer Loschen, a canine officer, conducted a drug sniff of the outside of the vehicle. The dog alerted. Officer Loschen asked the driver, Alfred Ferro, to exit the vehicle. Loschen found $131 in cash, a "tooter straw," and four "tins" (foil wrapped packets) of heroin on Ferro's person.

Officer Quinley approached the passenger side of the vehicle where defendant sat and asked him to exit the vehicle. After receiving defendant's consent, Quinley searched him. He found $486 in cash and a cellular telephone. The officers searched the vehicle and found 10 tins of heroin on the floorboard.

Officer Quinley advised defendant of his Miranda rights (see Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)). Initially, defendant told Quinley that the heroin was Ferro's, but he then admitted that he and Ferro purchase, sell, and use heroin together.

Defendant did not present any evidence at trial. After considering the

- 2 -

State's evidence, closing arguments, and jury instructions, the jury found defendant guilty of unlawful possession with intent to deliver less than one gram of heroin.

On May 17, 2007, defendant filed a motion for a new trial, claiming (1) the trial court erred in denying his motion for a directed verdict, and (2) the evidence was insufficient to sustain his conviction. On May 24, 2007, the court denied defendant's posttrial motion and proceeded to sentencing.

The trial court noted that it would be imposing a sentence on a Class 2 felony with mandatory Class X sentencing. It also noted that it had received and reviewed defendant's presentence investigation report (PSI). The court took judicial notice of defendant's Champaign County case No. 06-CF-985, which indicated that defendant was released on bond in that case when he committed the offense subject to this case. Neither party presented evidence in aggravation or mitigation; however, defendant made a statement in allocution. He admitted he had "been a drug addict" since the age of seven, but he maintained his innocence with regard to the instant offense.

After considering the PSI, the relevant statutory factors, defendant's statement, and arguments of counsel, the trial court sentenced defendant to 18 years in prison. The court noted defendant's "significant prior record," which included (1) five prior drug convictions, four of which involved the manufacture or delivery of a controlled substance; (2) one conviction for violation of bail bond; and (3) one conviction for disorderly conduct.

With regard to defendant's rehabilitative potential, the trial court noted that defendant was convicted of one drug offense only 10 days after he was discharged

from parole for a previous drug-related conviction. Defendant later violated the terms of the drug-court program by failing to complete treatment. He then served a seven-year sentence on a drug-related conviction. However, he committed another drug-related offense, posted bond, and committed this offense while released on bond. The court stated that "nothing has deterred him or even slowed him down; none of the sentences imposed, no court orders, no treatment, no prospect of answering to the court on yet another conviction have dissuaded him from continuing to commit the very same offense."

With regard to a deterrence factor, the trial court noted that "it must be clear this is not an option as a means to raise money." The court stated: "[T]his court has an absolute responsibility to deliver a resounding message that it will be a costly choice as a career path, particularly for someone who chooses to do it over and over again."

On June 12, 2007, defendant filed a motion to reconsider his sentence, claiming it was excessive given certain factors in mitigation. On July 2, 2007, the trial court denied defendant's motion to reconsider sentence, finding that it had "made detailed findings for the record at the time [it] imposed sentence as well as noting those factors in aggravation and mitigation that apply. [The court] believe[s] those were appropriate, and *** will stand on those at this time." This appeal followed.

## II. ANALYSIS

### A. Voir Dire

Defendant first claims the trial court failed to comply with the mandates of Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). The rule was amended effective May 1, 2007 (six days prior to the start of defendant's jury trial). The amendment imposed upon the trial court a <u>sua sponte</u> duty to question the potential jurors during <u>voir</u> <u>dire</u> of their understanding and acceptance of the principles set forth in <u>People v. Zehr</u>, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984), principles related to the basic constitutional guarantees of a criminal defendant during his trial.

The amended version of Rule 431(b) provides as follows:

"(b) The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."

The State concedes that the trial court failed to specifically comply with this rule by failing to question the prospective jurors, either individually or in a group, as to whether the jurors understood and accepted all of the Zehr principles, as required by amended Rule 431(b). We accept the State's concession and hold that the court's failure to specifically comply with the rule was error.

However, the State claims that the error was harmless, given the weight of the evidence against defendant and the fact that the trial court sufficiently complied with the gist of the amended rule, even though it did not pose the specific questions of whether the jurors understood and accepted the principles.

There is no doubt that the amended rule applies to defendant's trial here. See People v. Gilbert, 379 Ill. App. 3d 106, 111, 882 N.E.2d 1140, 1146 (2008) ("The trial court's sua sponte duty to question each potential juror regarding his understanding and acceptance of the Zehr principles applies only to voir dire conducted on or after the amended rule's effective date of May 1, 2007"). The question is whether the court's failure to strictly comply with the amendment requires reversal.

Defendant argues that the amended Rule 431(b) provides that the trial court "shall" rather than "may" ask the jurors if they understand and accept the Zehr principles. Thus, he argues that the mandatory nature of the rule precludes any discretionary or partial compliance and requires that his conviction be reversed and the case remanded for a new trial.

Our supreme court has held that the rules of statutory construction apply with equal force to the interpretation of all Illinois Supreme Court rules. In re Estate of Rennick, 181 Ill. 2d 395, 404, 692 N.E.2d 1150, 1155 (1998). One such rule is that the

plain language of the statute or rule should not be interpreted in a way that would render its terms "meaningless or superfluous." People v. Jones, 168 Ill. 2d 367, 375, 659 N.E.2d 1306, 1309 (1995). Therefore, a finding that the trial court had merely the discretion (after May 1, 2007) to question potential jurors of their understanding and acceptance of the Zehr principles would render the term "shall" meaningless and superfluous. Indeed, prior to the amendment, the court was obligated to question the jurors as provided only if requested by the defendant. See 177 Ill. 2d R. 431(b). The language, "[i]f requested by the defendant" was deleted, leaving the court with the affirmative duty to sua sponte question the jurors accordingly. Given the mandatory nature of the rule, it would appear that we are required to reverse defendant's conviction regardless of whether the court's failure to question the jurors as required by Rule 431(b) resulted in prejudice to defendant.

However, we find guidance in our supreme court's decision in People v. Houston, 226 Ill. 2d 135, 874 N.E.2d 23 (2007), where the court failed to give full effect to the principle of strict compliance with the mandatory nature of the Illinois Supreme Court rules. In Houston, the defendant claimed that his trial counsel was ineffective for waiving a court reporter during voir dire. The supreme court found that counsel's waiver constituted deficient performance because it violated Supreme Court Rule 608(a)(9) (210 Ill. 2d R. 608(a)(9)), a rule that provides that voir dire "shall" be recorded. Houston, 226 Ill. 2d at 148, 874 N.E.2d at 32. Although the court specifically noted that the supreme court rules must be obeyed and enforced, it remanded the case with directions to conduct a hearing to reconstruct the voir dire record so that the defendant's claim of prejudice could be further examined. Houston, 226 Ill. 2d at 152-

53, 874 N.E.2d at 34. The court did <u>not</u> find that the failure to comply with Rule 608(a)(9) resulted in automatic reversal; but rather, the court held that the prejudice prong of the <u>Strickland</u> analysis (see <u>Strickland v. Washington</u>, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)) needed to be further examined.

Similar to a <u>Strickland</u> analysis, prejudice is inherent in a harmless-error analysis. See <u>People v. Allen</u>, 222 Ill. 2d 340, 369, 856 N.E.2d 349, 365-66 (2006) (in a plain-error analysis, prejudice is presumed; in a harmless-error analysis, the defendant must demonstrate prejudice). Because the court in <u>Houston</u> sought to have the prejudice to the defendant further examined before reversing on the basis of an ineffective-assistance-of-counsel claim, this court will likewise engage in a harmless-error analysis and search the record for a demonstration that defendant was prejudiced by the trial court's failure to comply with Rule 431(b).

At the beginning of <u>voir</u> <u>dire</u>, when the prospective jurors as a group were gathered before the trial court, the presiding judge addressed the pool as follows:

"The [d]efendant is presumed to be innocent, and that presumption remains throughout the case. And is not overcome, unless from all the evidence you are convinced beyond a reasonable doubt that the [d]efendant is guilty. Before the [d]efendant may be convicted, the State must prove him guilty beyond a reasonable doubt. The burden of proof is on the State and that burden never shifts. The [d]efendant is not required to present evidence, and the [d]efendant is not required to prove his innocence. The [d]efendant is not

- 8 -

required to testify.  If the [d]efendant does not testify, the

fact that he did not testify may not be considered by you in

any way."

The trial court addressed all four <u>Zehr</u> principles, albeit not in question form, to ascertain the jurors' individual understanding and acceptance of them, but as an admonition of defendant's constitutional guarantees associated with his trial.

However, the trial court specifically addressed and questioned each individual juror as follows:

"THE COURT:  Do you understand and accept the

principle of law, that before the [d]efendant can be convicted

the State must prove him guilty beyond a reasonable doubt?

JUROR ***:  Yes.

THE COURT:  Do you understand and are you in

agreement with the presumption of innocence that applies?

JUROR ***:  Yes."

With this questioning, the trial court <u>sua</u> <u>sponte</u> complied with two of the four provisions of Rule 431(b).  Defense counsel followed the court's inquiry with the following questions:

"MR. ORTEGA [(defense attorney)]:  Thank you.  And

you--all of you also understand that Mr. Stump isn't required

to present any evidence?

FOUR JURORS:  (Indicating in the affirmative).

MR. ORTEGA:  In other words, Mr. Stump doesn't

- 9 -

have to testify?

FOUR JURORS:  (Indicating in the affirmative).

MR. ORTEGA:  If Mr. Stump chose not to testify,

would you hold that against him?

FOUR JURORS:  (Indicating in the negative)."

Defense counsel asked 8 of the 12 impaneled jury members the above questions.  For the last four jury members, counsel asked only if the jurors presumed defendant innocent, if they understood the State's burden, and if they would hold the State to that burden.  The jurors, as a group, answered in the affirmative.

Pursuant to Rule 431(b), the trial court, not defense counsel, was obligated to pose the specific questions set forth in the rule to the jurors to ascertain their understanding and acceptance of the constitutional principles.  The court did not fully comply with this mandate and that failure to comply does constitute error.  However, we find the error was harmless because (1) all four Zehr principles were addressed to each juror at some point during voir dire, and (2) the evidence presented at trial against defendant was overwhelming.  See People v. Smith, 38 Ill. 2d 13, 17, 230 N.E.2d 188, 191 (1967) (harmless error is that which did not contribute to the defendant's conviction).  We cannot reasonably find that the jury's verdict was affected by the court's error.

B.  Sentencing

Defendant next argues that the trial court abused its discretion in sentencing defendant to 18 years in prison, claiming the sentence was disproportionate to the seriousness of the offense.  In this court's view, defendant claims his sentence is excessive, an argument he made in his motion to reconsider.  Therefore, we disagree

with the State that defendant has forfeited review of the issue for the purposes of this appeal.

It is a well-established principle of law that a trial court has broad discretionary powers and great deference in fashioning a sentence for a defendant. People v. Stacey, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000). This is so because the trial court is in a better position to determine the appropriate sentence given the court's "opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." Stacey, 193 Ill. 2d at 209, 737 N.E.2d at 629.

Defendant was convicted of a Class 2 felony; however, due to his criminal record, the trial court was required to sentence him as a Class X felon. 730 ILCS 5/5-5-3(c)(8) (West 2006). The sentence imposed upon a conviction of a Class X felony shall be not less than 6 nor more than 30 years in prison. 730 ILCS 5/5-8-1(a)(3) (West 2006). Defendant's sentence of 18 years clearly falls within the permissible range.

The trial court here did an excellent job of providing this court with an accurate and thorough record of its sentencing decision. The court carefully and meticulously considered its responsibility and authority in light of the nature of the crime, the statutory factors, and the eligible range of punishment. It fashioned a sentence which, in its discretion, was appropriate. Defendant's extensive criminal history, his demonstrated failed attempts at rehabilitation, and the court's responsibility to deter future conduct of this sort all support the court's imposition of an 18-year prison sentence. The court noted that "the last time [defendant] appeared before the court for sentencing on this very same offense, but in another case, he received a

sentence of 15 years" in prison. The court's intent was to impose a sentence no less than the sentence defendant received for the same offense previously. Defendant committed the current offense while out on bond for the offense for which he received a 15-year sentence. Obviously, previous sentences and attempts at treatment had no effect on defendant' ability to refrain from this conduct. As such, we find the court did not abuse its discretion in sentencing defendant to 18 years in prison.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH and TURNER, JJ., concur.