THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES OWENS, Defendant-Appellant.

Fourth District   No. 4—08—0161

Opinion filed September 16, 2009.

Michael J. Pelletier, Gary R. Peterson, and Ryan R. Wilson, all of State Appellate Defender's Office, of Springfield, for appellant.

Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In December 2007, a jury convicted defendant, James Owens, of retail theft. In February 2008, the trial court sentenced defendant to a 10-year prison term. Defendant appeals, arguing (1) the court committed reversible error when it failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), (2) the State erred when it repeatedly disregarded the court's ruling barring evidence that the loss-prevention officer who viewed videotapes of the theft identified defendant from those tapes, and (3) the State failed to prove beyond a reasonable doubt the stolen television had a value over $150. We reverse and remand for a new trial.

## I. BACKGROUND

In August 2007, the State charged defendant with retail theft over $150, a Class 3 felony (720 ILCS 5/16A—3(a), 16A—10(3) (West 2006)) (count I), and retail theft (subsequent offense), a Class 4 felony (720 ILCS 5/16A—3(a), 16A—10(2) (West 2006)) (count II). The State nol-prossed count II before trial.

In December 2007, the trial court held defendant's jury trial. After the court brought the entire venire into the courtroom, but before choosing any prospective jurors for individual examination, the court stated the following:

"The jury will *** be required to follow the law, which will be given later in the case. *** The jury will be required to follow the law, even though you may not personally agree with it or may not like it. For example, there are certain fundamental principles of law which govern this trial. Under the law, a defendant is presumed innocent of the charges against him, and that presumption remains throughout every stage of the trial. The defendant is not required to prove his innocence, and he is not required to present any evidence at all. If the defendant does not testify, this is not to be held against him. He is not required to present any evidence at all. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and the judge and the jury are both required to be fair and impartial."

After the entire venire was put under oath, the trial court clerk called 14 prospective jurors into the jury box for *voir dire*. The trial court then summarized the *voir dire* for the jurors in the following manner:

"I [am] going to ask each one of you some questions about [yourself]. *** I'm going to be asking you about the adult members of your household and what jobs they currently hold or are retired from. I'm going to ask you if you've ever served on a jury before, and if you have, I'll ask a little bit about that. Does anybody have any cases currently pending that they are a witness or a party in?"

The following excerpt between the trial court and a panelist is typical of the court's questioning during *voir dire*:

"Q. *** Can you [(prospective juror)] tell us about you[rself]?

A. I live in Hoopeston, Illinois, and I am retired from Heatcraft. I have two grown children. Do you have a half hour to listen. My youngest daughter is a kindergarten teacher, and my oldest daughter works in clinical research for Eli Lilly. What else would you like to know?

\* \* \*

Q. *** Have you ever served on a jury before?

A. Yes. I've been on three juries, a [c]oroner's jury, a federal jury, and another jury that was here.

\* \* \*

Q. Okay. Is there anything about your service in those cases that would carry over here and affect your ability to be fair and impartial?

A. No.

Q. Do you have any cases pending?

A. No.

Q. And forgive me if I have asked this, are you familiar with anybody participating in the case?

A. No."

Through questioning, the trial court also determined the panelists could fairly judge the testimony of law-enforcement officers and set aside their own experiences as victims of crime. The State asked no questions of the first group of panelists. Defense counsel questioned each prospective juror if he or she had experience working in retail sales, specifically with shoplifters. No panelist indicated he or she had experience dealing with shoplifters while working in retail sales.

Neither the State nor defense counsel asked any questions regarding the reasonable-doubt standard, the defendant's right to remain silent, the defendant's lack of an obligation to present a defense, or the presumption of innocence. Of the 14 initial panelists, the parties excused 3 panelists, accepted 8 panelists, and passed 3 panelists.

The trial court then called another panel of 14 prospective jurors. The court essentially repeated its questions from the first panel. The court asked the panelists about their occupational and familial backgrounds, pending criminal cases, prior jury service, experience with shoplifting, and the effect of law-enforcement testimony and experience as victims of crime on their ability to be fair and impartial.

After the trial court's questioning, the State asked the following questions to the panelists in group format:

"Is there anything about Wal-Mart in and of itself that could keep you from being fair and impartial? *** Does anyone have a religious or philosophical position so strong that they couldn't render a decision one way or another in this case? *** Has anybody worked in retail and had experience with someone either caught or prosecuted for retail theft?"

No panelist was excused for cause based upon the State's questions. Defense counsel did not question the second panel.

The trial court, the State, and defense counsel did not question the second panel regarding the reasonable-doubt standard, the defendant's right to remain silent, defendant's lack of an obligation to present a defense, or the presumption of innocence. Defense counsel did not raise an objection to the court's failure to ask the panelists if they understood and accepted those principles.

After closing arguments, the trial court gave the following verbal instructions, in pertinent part, to the jury:

"The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in this case, you are convinced beyond a reasonable doubt that he is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt."

The trial court instructed the jury on the burden of proof, as follows:

> "The defendant is presumed to be innocent of the charge against him. This presumption *** is not overcome unless *** you are convinced beyond a reasonable doubt that he is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt ***. The defendant is not required to prove his innocence."

See Illinois Pattern Jury Instructions, Criminal, No. 2.03 (4th ed. 2000). The court did not give to the jury Illinois Pattern Jury Instructions, Criminal, No. 2.04 (4th ed. 2000) (hereinafter IPI Criminal 4th), which instructs the jury that it may not consider defendant's failure to testify in any way.

As stated, the jury found defendant guilty of retail theft over $150, and the trial court sentenced defendant to a 10-year prison term.

This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court committed plain error when it failed to comply with Supreme Court Rule 431(b).

### A. *Zehr* Questions and Rule 431(b)

Defendant argues that the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) when, in December 2007, it failed to ask prospective jurors whether they agreed with the principles that the rule articulates. The State concedes the error but argues (1) defendant forfeited the error by failing to object, and the error does not require reversal under the plain-error doctrine (see *People v. Anderson*, 389 Ill. App. 3d 1, 9, 904 N.E.2d 1113, 1121 (2009) (plain-error analysis)); and (2) the error was harmless (see *People v. Stump*, 385 Ill. App. 3d 515, 522, 896 N.E.2d 904, 909 (2008) (harmless-error analysis)).

### B. Violation of Supreme Court Rule 431(b)

Supreme Court Rule 431(b) codifies the requirement that the trial court question each juror regarding the four principles announced in *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). In *Zehr*, the supreme court held that a trial court committed reversible error when it refused to ask potential jurors whether they knew and agreed with the principles that (1) the defendant is presumed innocent, (2) the defendant need not offer evidence on his own behalf, (3) the defendant's failure to testify cannot be considered in any way to reach a verdict, and (4) the State has the burden to prove defendant guilty beyond a reasonable doubt. *Zehr*, 103 Ill. 2d at 477-78, 469 N.E.2d at 1064. In so holding, the supreme court reasoned that instructions or

admonitions given before or after trial will have little curative effect on a juror prejudiced against any of the defendant's basic trial guarantees. *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) codifies the requirement that the trial court ask each potential juror the *Zehr* questions. The rule states that the trial court "shall ask each potential juror, individually or in a group, whether that juror understands and accepts the [*Zehr* principles]." When the amended Rule 431(b) came into effect on May 1, 2007, questioning became required, the only exception being if the defendant objected to inquiry regarding his failure to testify. Compare Ill. S. Ct. R. 431(b) (eff. May 1, 2007) ("no inquiry \*\*\* shall be made \*\*\* when the defendant objects"), with 177 Ill. 2d R. 431(b) (requiring questioning only "[i]f requested by the defendant"). "The supreme court's rules are not aspirational; rather, they have the force of law." *People v. Young*, 387 Ill. App. 3d 1126, 1127, 903 N.E.2d 434, 435 (2009). Compliance with Rule 431(b) is mandatory. See *Stump*, 385 Ill. App. 3d at 520, 896 N.E.2d at 908.

In this case, the trial court failed to comply with the requirements of Supreme Court Rule 431(b). The record reveals that the court asked potential jurors, *inter alia*, about their familial and occupational backgrounds, prior jury service, pending criminal cases, retail sales experience, and views on law-enforcement testimony. While the court reviewed the *Zehr* principles articulated in Supreme Court Rule 431(b) with the entire venire before selecting prospective jurors, it failed to determine through questioning whether each juror understood and accepted those principles. In this respect, the court committed error. See *Anderson*, 389 Ill. App. 3d at 9, 904 N.E.2d at 1120 (requiring the trial court to give jurors an opportunity to respond to questions about *Zehr* principles).

## C. Plain-Error Analysis

A criminal defendant has a constitutional right to a fair and impartial jury. *People v. Waid*, 221 Ill. 2d 464, 476, 851 N.E.2d 1210, 1217 (2006). However, the defendant may forfeit review of any error, even an error of constitutional magnitude, where the defendant's trial counsel fails to raise a timely objection and include that objection in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30 (1988). Plain-error review allows the court to disregard the defendant's forfeiture and reach the merits of a forfeited error in two situations. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009).

" '(1) [A] clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Walker*, 232 Ill. 2d at 124, 902 N.E.2d at 697, quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007).

Under plain-error analysis, the defendant bears the burden of proof. *People v. Herron*, 215 Ill. 2d 167, 182, 830 N.E.2d 467, 477 (2005). Under the second prong of the analysis, "[t]he accused is denied a fair and impartial trial where the prejudice reveals a total breakdown in the integrity of the judicial process." *People v. Evans*, 209 Ill. 2d 194, 224, 808 N.E.2d 939, 956 (2004).

We conclude the record here reveals a complete breakdown of the judicial process that undermines this court's confidence in the jury's verdict. While the trial court instructed the jurors on all four *Zehr* principles, it did so before selecting panelists for questioning. As a consequence, the court never directly questioned the individual jurors regarding their agreement or disagreement with the *Zehr* principles. The fact that the court admonished the *venire* before questioning, gave oral instructions before deliberations began, and delivered IPI Criminal 2.03, each of which recited the *Zehr* principles in whole or in part, does not excuse the court's failure to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). The point of questioning is to determine whether any juror holds a belief making him or her unqualified to sit on a jury. As the supreme court stated in *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064, "If a juror has a prejudice against any of [*Zehr*'s] guarantees, an instruction given at the end of the trial will have little curative effect."

We distinguish this case from *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909, in which this court held harmless a trial court's failure to question each prospective juror about all four *Zehr* principles. In *Stump*, the trial court read the *Zehr* presumptions to the prospective jurors as a group and later questioned each impaneled juror regarding the presumption of innocence and the State's burden of proof. *Stump*, 385 Ill. App. 3d at 521, 896 N.E.2d at 908-09. Defense counsel questioned 8 of the 12 impaneled jurors regarding the defendant's right not to present evidence and the bar on holding defendant's failure to testify against him. *Stump*, 385 Ill. App. 3d at 521-22, 896

N.E.2d at 909. The last four impaneled jurors were not asked if they understood and agreed with the principles that defendant did not have to present any evidence and his failure to testify could not be held against him. *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909. This court held the failure harmless because the trial court addressed each principle to every juror, including questioning of 8 of the 12 impaneled jurors in compliance with the rule and some questioning of 4 of the 12 impaneled jurors, and evidence of defendant's guilt was overwhelming. *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909.

Here, the trial court failed to question any member of the venire about any of the four *Zehr* principles. While the questioning in *Stump* substantially complied with the requirements of Rule 431(b), the questioning in this case did not. We cannot know whether the trial court's failure to investigate potential prejudice of any impaneled jury member contributed to the verdict. Such uncertainty undermines our confidence in the verdict and gives rise to doubts regarding the effectiveness of the judicial process ultimately resulting in defendant's conviction.

Because we hold that the court's failure to comply with Supreme Court Rule 431(b) requires reversal and remandment, we do not reach the merits of defendant's other arguments. However, because issues of identification are likely to reoccur on remand, we briefly discuss the standard for admissibility of lay-witness identification of individuals on videotapes. Wal-Mart's loss-prevention officer, Robert Powell, testified he identified defendant from a store videotape of higher quality than the jury viewed and detained him based upon that identification. In *People v. Starks*, 119 Ill. App. 3d 21, 26, 456 N.E.2d 262, 265-66 (1983), this court held that the identification testimony of a lay witness who has no personal knowledge of the events depicted on the tape itself is admissible where (1) the witness has personal knowledge of the defendant before the occurrence and (2) the testimony aids the trier of fact in resolving the issue of identification and does not invade the jury's fact-finding duties. We also note Powell's testimony might be admissible under the police-procedure exception for a limited purpose to show his reasons for taking defendant into custody and calling the police.

Finally, we find that the evidence was sufficient to sustain defendant's conviction. Although we reach no conclusion binding on retrial as to defendant's guilt, we conclude that double jeopardy does not bar a retrial of defendant. See *Walker*, 232 Ill. 2d at 131, 902 N.E.2d at 700.

## III. CONCLUSION

For the reasons stated, we reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

TURNER and POPE, JJ., concur.