THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAMAR WILMINGTON, Defendant-Appellant.

First District (4th Division)   No. 1—07—2518

Opinion filed September 24, 2009.

Michael J. Pelletier, Patricia Unsinn, and Aliza R. Kaliski, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Ashley Romito, and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Following a jury trial, defendant Lamar Wilmington was convicted of the first degree murder of Guan McWilliams and of concealing that homicidal death. Defendant was sentenced to consecutive terms of 50 years and 5 years in prison, respectively, for those crimes. On appeal, defendant contends that he was denied a fair trial for two reasons: (1) the trial court did not ascertain that defendant consented to his counsel's tendering of a jury instruction on second degree murder; and (2) the trial court did not fully comply with the *voir dire* requirements of Illinois Supreme Court Rule 431(b) (177 Ill. 2d R. 431(b)). Because the trial court's admonitions to potential jurors did not comply with Rule 431(b), we reverse defendant's convictions and sentence and remand for a new trial.

## BACKGROUND

On March 4, 2004, McWilliams' body was found in a garbage can at 7446 South Eberhart in Chicago. An autopsy revealed that McWilliams had been shot twice in the top of the head. About a week later, defendant went to the Third District police station and told an officer that a person known as "Dollar" killed McWilliams. Police interviewed Dollar and eliminated him as a suspect.

On June 14, 2004, defendant returned to the police station and reported that his head had been grazed by a bullet. After investigating that complaint, officers informed defendant of his *Miranda* rights and questioned him about McWilliams' death. Defendant admitted shooting McWilliams and described the events that led to the offense. Defendant said that he and McWilliams met at a bar in 2003 and occasionally had sex when McWilliams initiated a meeting.

Defendant told police that on March 3, 2004, McWilliams called him and asked for $200; defendant had no money but told McWilliams to come to defendant's residence anyway. After they had sex, McWilliams again asked for money and they began to argue. McWilliams said he had AIDS and threatened to tell police defendant had raped him. McWilliams pulled out a gun, which defendant easily took away from McWilliams because defendant was bigger and stronger. Defendant became angry and called McWilliams a "little bitch." McWilliams threatened to tell people in the neighborhood that they were having sex, which angered defendant because he did not want his sexual orientation known.

While defendant held the gun, McWilliams, who was naked and unarmed, ran at him. Defendant fired about four shots, striking McWilliams in the top of the head because McWilliams was hunched over when he ran at defendant. McWilliams fell to the ground, bleeding, and defendant said he looked like he was dead. Defendant put clothes on the body, and a friend helped him put the body in a garbage can. Defendant told police that he had implicated Dollar because he and Dollar had fought over a girl.

For the defense, Dr. Robert Hanton, a clinical neuropsychologist, testified that defendant had a chronic seizure disorder documented back to 1998 and that the argument, shooting and moving of the body would have been stressful for defendant and likely could not have occurred without defendant suffering a seizure, though the State's version of events was "certainly possible." Other defense witnesses testified about McWilliams' life and the placement of the garbage can in which the body was found. A man who sells items he finds in the trash testified that he did not see a body in the garbage cans at 7446 South Eberhart on the morning after the shooting.

## ANALYSIS

We first address defendant's contention that this court must reverse his conviction and remand for a new trial because the trial court's admonitions to the jury venire did not comply with Rule 431(b). That rule codifies the Illinois Supreme Court's holding in *People v. Zehr* that four inquiries must be made of potential jurors in a criminal

case that " 'go[ ] to the heart of a particular bias or prejudice which would deprive [a] defendant of his right to a fair and impartial jury.' " *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), quoting *People v. Zehr*, 110 Ill. App. 3d 458, 461, 442 N.E.2d 581, 584 (1982).

■ The version of Rule 431(b) that was in effect when defendant's trial occurred in July 2007 (the "2007 rule") provided:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Previously, the rule began with the phrase "if requested by the defendant." 177 Ill. 2d R. 431(b). Under that earlier version, the *Zehr* admonitions only were posed to the venire if the defendant asked the court to do so. The 2007 rule removes the prefatory language and requires the trial court to issue the *Zehr* admonitions and inquiries *sua sponte*. According to the committee comments to the rule:

"The new language is intended to ensure compliance with [*Zehr*]. It seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431(b), Committee Comments, at lxxix.

In the case at bar, before *voir dire* was conducted of individual panel members, the trial court admonished the entire group of potential jurors about each of the four principles in *Zehr*:

"Mr. Wilmington[,] as with other persons charged with crimes[,] is presumed to be innocent of the charges that bring him before you. *** It is absolutely essential as we select this jury that each of you understand and embrace these fundamental principles; that is, that all persons charged with a crime are presumed to be innocent and that it is the burden of the state who has brought the charges to prove the defendant's guilt beyond a reasonable doubt.

What this means is that the defendant has no obligation to testify in his own behalf or to call any witnesses in his defense. He may

simply sit here and rely upon what he and his attorneys perceive to be the inability of the state to present sufficient evidence to meet their burden. Should this happen, you will decide this case on the basis of the evidence presented by the prosecution. The fact that *** the defendant chooses not to testify must not be considered by you in any way in arriving at your verdict."

After giving other admonitions, the trial court returned to the *Zehr* principles. The court asked the venire members if they disagreed with those concepts:

"I spoke to you earlier about some fundamental principles of law. I want to ask you as a group one more time about these fundamental principles. I spoke about the facts—and when I ask these questions—by the way so I don't miss anybody, I'm going to do what I did with the witness questions. I'm going to go to the [jury] box first and then I'm going to do the left side of the courtroom and then the right side of the courtroom.

I have spoke[n] about the fact the defendant is presumed to be innocent of the charges against him and that this presumption stays with the defendant throughout the trial and is not overcome unless and until the jury determines the defendant is guilty beyond a reasonable doubt.

Is there anyone in the courtroom here in the jury box amongst you who disagrees with this fundamental principle of law? If so, please raise your hand."

The trial court then asked that question to the groups of potential jurors seated on the right and left sides of the courtroom, noting as to each group that "no hands are raised."

The trial court made two more specific inquiries of the three groups in the venire:

"I also spoke about the fact the State has the burden of proving the defendant guilty beyond a reasonable doubt. Is there anyone among you *** who disagrees with this fundamental principle of law? If so, please raise your hand."

The trial court continued:

"Because the defendant is presumed to be innocent, he does not have to present any evidence at all in this case. He can simply rely on the presumption of innocence. Is there anyone among you *** who disagrees with this fundamental principle of law? If so, please raise your hand."

After asking each question to each group, the trial court noted, "The record should reflect no hands are raised."

Defendant contends that even though the trial court informed the venire members of all four *Zehr* principles, the admonitions violated Rule 431(b) because the court did not question the potential jurors

about their understanding and acceptance of one of the principles, *i.e.*, the defendant's right not to testify. Issues raised on appeal are preserved for review by objecting during trial and filing a written posttrial motion raising the alleged error. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Defendant did neither but argues this issue can be considered as plain error. The plain error doctrine allows a reviewing court to reach an unpreserved error in two circumstances: (1) where the evidence is closely balanced, regardless of the nature of the error; or (2) where the error is so serious that the defendant was denied a substantial right and a fair trial, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467, 475 (2005).

The State concedes that the court did not ask potential jurors if they understood that defendant had the right not to testify but argues the admonitions substantially complied with Rule 431(b). The State argues that the admonition as to defendant's right not to present any evidence effectively encompassed the principle of a defendant's right not to testify. The State also asserts that any omission can be deemed harmless error.

This court has discussed the effect of a trial court's failure to fully comply with the 2007 version of Rule 431(b) both in the contexts of plain error and harmless error. The Illinois Supreme Court recently ruled in *People v. Glasper*, 234 Ill. 2d 173 (2009), that a harmless error analysis can be applied to a case of inadequate Rule 431(b) admonitions. However, *Glasper* involved the earlier version of Rule 431(b) under which a defendant had to request that the *Zehr* questions be asked of the venire, as opposed to the current version of the rule under which the admonitions are required. The court stated that its holding was "limited to the version of [Rule 431(b)] that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." *Glasper*, 234 Ill. 2d at 200. Thus, we do not read *Glasper* to hold that a harmless error analysis can apply to the 2007 rule.

Our research has located five recent Illinois Appellate Court opinions that have addressed the 2007 rule with differing results. In *People v. Anderson*, 389 Ill. App. 3d 1, 5, 904 N.E.2d 1113, 1117-18 (1st Dist. 2009), the trial court failed to tell venire members that the defendant's decision not to testify should not be held against him. The appellate court noted that the trial court set out the other three *Zehr* principles "in narrative form, not in questions" and did not ask the venire members if they had questions about those concepts, instead asking if the venire could return the appropriate verdict form if the State met or did not meet its burden of proof. *Anderson*, 389 Ill. App. 3d at 8, 904 N.E.2d at 1117-18.

The appellate court held that those admonitions failed to comply with Rule 431(b) and denied the defendant a fair trial, thereby constituting plain error. *Anderson*, 389 Ill. App. 3d at 9, 904 N.E.2d at 1121. Under the 2007 rule, potential jurors must be asked if they understand and accept the principles and be given the opportunity to respond to the court's questions. *Anderson*, 389 Ill. App. 3d at 8, 904 N.E.2d at 1120. The court noted that the trial court's general inquiry about the "appropriate verdict form" was an overall question concerning the jurors' willingness to follow the law, which is precisely what the 2007 amendments to Rule 431(b) sought to prevent. *Anderson*, 389 Ill. App. 3d at 8, 904 N.E.2d at 1120 (citing the committee comments).

Citing *Anderson*, this court in *People v. Graham*, 393 Ill. App. 3d 268 (2009), likewise found plain error. The trial court in *Graham* described all four *Zehr* principles to the venire; however, the court then questioned a panel of potential jurors about three principles and failed to question and allow the jurors to respond to whether they understood that the State bore the burden of proving the defendant guilty beyond a reasonable doubt. *Graham*, 393 Ill. App. 3d at 273. Admonitions to a subsequent panel also were incomplete as to the panel's understanding and acceptance that the defendant was presumed innocent. *Graham*, 393 Ill. App. 3d at 273-74. The appellate court in *Graham* held that plain error occurred because the trial court failed to fully comply with Rule 431(b), thus denying the defendant a substantial right. See also *People v. Blanton*, No. 4—08—0120 (4th Dist. 2009) (finding plain error when the trial court fully advised the venire on three of the four principles but entirely omitted an admonition as to the defendant's right not to testify).

However, two opinions have affirmed convictions despite incomplete admonitions. In those cases, the appellate court held that the incomplete admonitions did not constitute plain error or harmless error because the venire was advised of the four *Zehr* principles and the omissions occurred in the questioning of the venire members about their understanding of those concepts. *People v. Alexander*, 391 Ill. App. 3d 419, 432, 908 N.E.2d 173, 184 (3d Dist. 2009); *People v. Stump*, 385 Ill. App. 3d 515, 522, 896 N.E.2d 904, 909 (4th Dist. 2008).[1]

In *Stump*, the appellate court held that the trial court failed to fully comply with Rule 431(b) because even though the court

[1]Although the opinion in *Graham* stated that the Illinois Supreme Court has allowed a petition for leave to appeal in *Stump*, further investigation by this court has determined that information is incorrect, though it may have been accurate at the time *Graham* was issued.

admonished the potential jurors as to all four principles, the court did not ask if they understood and accepted the principles. *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909. However, the court affirmed the defendant's conviction under a harmless error analysis. *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909. The court concluded that "all four *Zehr* principles were addressed to each juror at some point during *voir dire*" and the evidence against the defendant was overwhelming. *Stump*, 385 Ill. App. 3d at 522, 896 N.E.2d at 909.

Similarly, in *Alexander*, the appellate court found error when the trial court informed potential jurors of the *Zehr* principles but did not ask if they understood and accepted the principles. *Alexander*, 391 Ill. App. 3d at 430, 908 N.E.2d at 183. The court distinguished *Anderson*, where the admonitions omitted one *Zehr* principle entirely, and affirmed the defendant's conviction, stating that the failure to follow a supreme court rule did not constitute "*per se* plain error." *Alexander*, 391 Ill. App. 3d at 432-33, 908 N.E.2d at 184-85.

However, one justice dissented in *Alexander*, stating that the incomplete admonitions constituted plain error and that the defendant could receive the full protections of Rule 431(b) only by receiving a new trial. *Alexander*, 391 Ill. App. 3d at 436, 908 N.E.2d at 187 (McDade, J., concurring in part and dissenting in part). The dissent disagreed that *Anderson* was distinguishable on its facts, stating that the 2007 rule requires the trial court not merely to inform the venire of the ideals set out in *Zehr* but also "to ensure that the jurors actually know, understand, and accept the enumerated principles by requiring them to demonstrate their knowledge and acceptance by response to direct questions." *Alexander*, 391 Ill. App. 3d at 438, 908 N.E.2d at 189 (McDade, J., concurring in part and dissenting in part).

■ We now turn to the facts presented here. The trial court described all four *Zehr* principles to potential jurors in this case. However, the court failed to ask the venire members if they understood and accepted one of the principles, namely, the defendant's right not to testify, even though the court carefully provided that opportunity as to the three other points.

The 2007 rule states that the trial court "shall ask each potential juror, individually or in a group, whether that juror understands and accepts" the four *Zehr* principles. Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Therefore, the trial court did not fully comply with Rule 431(b), which requires the court to ask potential jurors if they understand and accept each principle and requires that venire members be given an opportunity to respond. The incomplete admonitions in this case constituted error. Indeed, each of the cases discussed above interpreting the 2007 rule has found error when the facts established anything

short of (1) an admonition as to each principle and (2) the venire members' indications of their acceptance and understanding of each principle and an opportunity for individual inquiry.

Even though *Stump* and *Alexander* affirmed the defendants' convictions even in light of such error, we find *Anderson* and *Graham*, which found the incomplete admonitions to constitute plain error, to be more soundly reasoned. Even though the trial court in *Anderson* omitted one *Zehr* principle in its entirety, the appellate court, in finding plain error, focused on the fact that the potential jurors were not asked if they understood and accepted the principles. *Anderson*, 389 Ill. App. 3d at 8, 904 N.E.2d at 1120. In *Graham*, as here, the trial court informed the venire members of each principle but did not ascertain their understanding and acceptance of each concept. In the instant case, the trial court did not ensure that the potential jurors understood and accepted that the defendant's right to not testify should not be held against him.

The State points out that the jury was properly instructed at the close of evidence that the defendant did not have to testify. However, our supreme court in *Zehr* rejected that very assertion, noting that "if a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect." *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

The State's only challenge to the application of plain error is an assertion that the evidence of defendant's guilt was "overwhelming." Where the error is so serious that a defendant is denied a substantial right and a fair trial, regardless of the closeness of the evidence, the plain error doctrine applies. *Herron*, 215 Ill. 2d at 178-79, 830 N.E.2d at 475. The failure to conduct a complete admonition in accordance with Rule 431(b) denied defendant the right to a fair and impartial jury, which is a substantial right, and therefore constituted plain error. See *People v. Bean*, 137 Ill. 2d 65, 81, 560 N.E.2d 258, 265 (1990); *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

In closing, we return to the State's contention that substantial compliance with Rule 431(b) was sufficient. The role of the appellate court is to decide the issue before us. Should the Illinois Supreme Court decide that substantial compliance is all that Rule 431(b) requires, it has the ability to allow waiver of the rule or to create an exception. This court does not hold such power. We are also of the view that if we create an exception to compliance with Rule 431(b), the small trickle of these cases that is now occurring will turn into a cascade. We wish to avoid that result. The trial court here did a commendable job of complying with Rule 431(b) as to three of the four

principles. We do not wish to be harsh, and we are certainly not being critical. We simply are stating that during *voir dire*, all four admonitions must be given and an opportunity to disagree with each of the four principles must be afforded the venire. Supreme Court Rule 431(b) requires that this be done.

■ Although we are remanding for a new trial, the second issue raised by defendant in this appeal involves jury instructions and therefore could arise on retrial. Defense counsel submitted jury instructions on first degree and second degree murder. Defendant contends that the trial court was required to determine whether he agreed to the issuance of the second degree murder instruction, citing *People v. Medina*, 221 Ill. 2d 394, 409, 851 N.E.2d 1220, 1228 (2006), which held that where a lesser-included offense instruction is tendered, the trial court should ask defense counsel, in defendant's presence, whether counsel has informed defendant of the potential penalties associated with the lesser offense and that the court also must ask defendant whether he agrees with the tender.

We have found no authority applying *Medina* to instructions on second degree murder, which is a lesser mitigated offense, not a lesser included offense, of first degree murder. See *People v. Parker*, 223 Ill. 2d 494, 504-05, 861 N.E.2d 936, 941 (2006). We disagree with defendant that *Medina*'s holding applies to these facts. Here, defense counsel's tendering of a second degree murder instruction did not expose defendant to the risk of a "compromise verdict" that would warrant defendant's acquiescence to the instruction. The jury was instructed on self-defense, which required the giving of an instruction on second degree murder regardless of any objection or lack of express agreement by defendant. See *People v. Falkner*, 131 Ill. App. 3d 706, 712-13, 475 N.E.2d 964, 967 (1985) (discussing instructions on self-defense and voluntary manslaughter, which is now second degree murder in Illinois). Thus, the requirements of *Medina* do not apply.

CONCLUSION

Given our finding of plain error, defendant's conviction and sentence are reversed, and this case is remanded for a new trial. On remand, the requirements of *Medina* do not apply to the issuance of a second degree murder instruction. As a final matter, double jeopardy does not bar a retrial of defendant because he has not raised a challenge to the sufficiency of the evidence. See *People v. Walker*, 232 Ill. 2d 113, 131, 902 N.E.2d 691, 700 (2009).

Reversed and remanded.

O'MARA FROSSARD, P.J., and NEVILLE, J., concur.