# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sykes*, 2012 IL App (4th) 111110

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DUANE L. SYKES, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-1110 |
| Argued<br>Filed | July 18, 2012<br>July 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the theft prosecution of a retailer's employee, the admission of the loss prevention manager's narration of a surveillance video allegedly showing defendant removing money from a cash register violated the silent witness theory because the manager had no personal knowledge of the events depicted, the video should "speak for itself," and the province of the jury was invaded by allowing the manager to offer a lay opinion on the ultimate issue when he was in no better position to view the video than the jury, and the plain error that occurred was magnified by the prosecutor's closing argument bolstering the manager's credibility. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 09-CM-333; the Hon. Holly F. Clemons, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal     Michael J. Pelletier, Karen Munoz, and John M. McCarthy (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel     JUSTICE POPE delivered the judgment of the court, with opinion.

Presiding Justice Turner and Justice Knecht concurred in the judgment and opinion.

## OPINION

¶ 1     In January 2010, a jury convicted defendant, Duane L. Sykes, of misdemeanor theft (720 ILCS 5/16-1(a)(1) (West 2008)). In March 2010, the trial court sentenced defendant to 150 days in jail.

¶ 2     Defendant appeals, arguing (1)(a) reversible error occurred when (i) the testimony of the State's only witness violated the "silent witness theory" because the witness was allowed to narrate the contents of a video played for the jury and (ii) the error was further magnified by the prosecutor's improper closing argument; or (b) in the alternative, defendant received ineffective assistance of counsel because counsel failed to object to the improper testimony or closing argument therein; and (2) the evidence was insufficient to prove defendant committed theft beyond a reasonable doubt. We reverse.

¶ 3                I. BACKGROUND

¶ 4     On March 10, 2009, the State charged defendant by information with misdemeanor theft (720 ILCS 5/16-1(a)(1) (West 2008)), alleging defendant intended to permanently deprive his employer, Bergner's department store, of less than $300.

¶ 5                A. The State's Case

¶ 6     During defendant's January 6, 2010, trial, the State presented the testimony of one witness, Steven Thuney, a loss prevention manager for Bon Ton stores, which owns Bergner's. Thuney testified Bergner's policy during the holiday season and on busy days was for the closing person to leave $200 in the cash register overnight as a starting fund for the next day. On December 20, 2008, Thuney discovered a cash register located in the men's department was $100 short. As part of his investigation into the loss, Thuney reviewed the detail tape from the cash register to examine the day's transactions and a video from a surveillance camera focused on the terminal where the alleged loss occurred. Thuney testified as to what he recalled observing on the original surveillance video as follows:

"At approximately nine o'clock–while reviewing the video at nine o'clock on the tape, I observed Duane Sykes at the register kind of pacing around. The store wasn't very busy. He looks at one point directly up at the camera for a moment, and then looks back down, wanders around a little bit, around the cash wrap area. Comes back to the cash register, enters what appeared to be his associate number to open the drawer of the register. When the drawer opened, with his left hand he removed it looked like a bill from the far left side of the terminal, cupped it in his hand, closed the terminal, removed the no sale receipt from the top of the terminal, and walked away and his hand went into his left pocket."

¶ 7 Thuney explained an associate number is a unique six-digit number assigned to each individual employee. An associate number must be entered prior to opening the cash register. A "no-sale" transaction is used by an employee to open the register for some reason other than a customer transaction, such as checking to see if the register needs change. To get change, an employee must first fill out a carbonless form indicating the change needed. Then the employee removes the appropriate amount of money from the register and places the money and the form into a blue bank bag, and a manager retrieves the bag and returns with the change. Thuney stated he found no copy of a change receipt filled out by defendant on December 20.

¶ 8 Thuney viewed the entire day's worth of video footage and did not observe any other actions that raised his suspicion as being involved with the missing $100. Days later (the next day defendant worked), Thuney called defendant into the store manager's office and confronted him. Defendant told Thuney he did not want to speak to him and left the office.

¶ 9 Following Thuney's narration of the original surveillance video, the State admitted a digital video recording (DVD) copy of the video into evidence without objection as State's exhibit No. 1 and published it to the jury. After the video was played for the jury, the following dialogue occurred:

"Q. [PROSECUTOR:] The quality of the video appears to be a little bit grainy. When you watched the video the first time on December 20th, what device were you watching it on?

A. [THUNEY:] I was watching it on the same VCR that produced the video.

Q. And at that time did it have the same quality as the DVD we've all just seen?

A. No. The quality was much better.

Q. What was different?

A. The video you saw was–had a lot of looked like electronic interference in it, and it was a little difficult to watch I guess.

Q. Uh-huh. When you watched it on the VCR, was electronic interference not present?

A. No. It was a clear picture.

Q. And you indicated that when you watched the video, you were able to see the defendant put a bill in his left hand. Were you able to clearly see that in this version of the DVD?

A. You can see it. It is a little bit more difficult based on where the interference occurs, but it is there."

¶ 10    During cross-examination, defense counsel established the DVD viewed by the jury was a copy of the original. Thuney acknowledged he did not personally witness defendant take any money from the cash register and the only knowledge he had about the incident was based on what he observed in the video. Thuney agreed no money was recovered from defendant and five or six other employees had access to the same register on December 20.

¶ 11                                    B. Defendant's Case

¶ 12    At the close of the State's evidence, defense counsel moved for a directed verdict, which the trial court denied. Defendant did not testify or present any evidence.

¶ 13                                    C. Closing Arguments

¶ 14                                    1. *Prosecutor's Argument*

¶ 15    During closing arguments, the prosecutor made the following comments:

"That's how Mr. Thuney knows what happened. He watched an entire day of Christmas shoppers at Bergner's on December 20th, a little over a year ago. He watched the whole day's worth of video, and I know our video is not wonderful. I would love to have the VHS. I don't have it. Mr. Thuney doesn't have it. *What we have is the quality of the video that we have here, and if Mr. Thuney hadn't watched it the day, December 20th, maybe we wouldn't know as well what happened, but thankfully, he did watch it, and he remembers. He tells you you can see it mostly on here, but it is clearer on the VHS, that you can see the defendant take the money, put it in his hand, put it in his pocket and walk away.* Now we can see all of those movements, but obviously it is just not quite as clear. We can't quite see the dollar bill in his hand, and obviously Mr. Thuney didn't even say he could see what denomination it was, but again we have circumstantial evidence that allows us to know that it was a hundred dollars, in whatever form. It was a hundred dollars." (Emphasis added.)

¶ 16                                    2. *Defense Counsel's Argument*

¶ 17    Defense counsel responded as follows:

"That video showed the right side of [defendant]. Unless Mr. Thuney has x-ray vision, I don't care how good quality that was, you could not see what was happening on the left side. Basically [the prosecutor] wants you to say, 'Well, I know I have bad video. I know the video doesn't actually show anything even though it is the only thing I showed you, but Mr. Thuney saw a good video. Believe us. He is the loss prevention officer. He watched it all day. He has worked here fourteen years so he must be telling the truth.' "

¶ 18                                    3. *The State's Rebuttal*

¶ 19    On rebuttal, the prosecutor continued as follows:

"Now the law as [defense counsel] tells you is that the only evidence you've seen is the video. The judge is going to tell you the real law. The real law is the evidence that you should consider consists of the testimony of the witness and the exhibit, and the video. Somebody sitting up here promising to tell the truth and telling you, that's evidence. Whether it is a video or not, that's evidence. It counts the same way the video counts. *** The evidence is what Mr. Thuney said up here and told you, and he told you that he watched the entire day's worth of video and no other employee did anything suspicious.

* * *

Now what [defense counsel's] memory is and her interpretation of the DVD, doesn't matter, just as *** mine doesn't matter. It is what each one of you thinks and what each one of you saw and what each one of you heard from Mr. Thuney.

* * *

[Defendant] still did it and he is hoping that each one of you won't believe what Mr. Thuney said and you won't believe what the video shows because the only inconsistency all day is Mr. Thuney's indication that he saw him put it in his left pocket. That's it. That is the only thing they have to hang their hat on. Everything else is one hundred percent as he said. So ladies and gentlemen, think about what you saw on the video and think about, as the judge will instruct you, what bias, interest or prejudice Mr. Thuney might have in lying to you today. Clearly he has none. It was over a year ago. You know, Bergner's doesn't pad his pockets the more people he catches, okay? He is here telling you the truth. He swore to tell the truth and he did, and what we have is that video took, and without it we probably wouldn't have a whole lot of anything, but the camera was working and Mr. Thuney watched him and so we have those things put together, the testimony, which is evidence, and the video, which is also evidence."

¶ 20                          D. Verdict, Posttrial Motion, and First Appeal

¶ 21        On January 6, 2010, the jury convicted defendant of misdemeanor theft.

¶ 22        On March 5, 2010, defendant filed a motion for acquittal, or in the alternative, a motion for a new trial, alleging the trial court (1) erred in denying his motion to continue the trial, (2) erred in denying his motion *in limine* to preclude the use of prior convictions to impeach his credibility, (3) erred in overruling his objections during the State's direct examination of Thuney, (4) erred in denying his motion for a directed verdict at the close of the evidence, and (5) erred in allowing the jury, over defendant's objection, to view the surveillance video during deliberations. Defendant's motion also argued the evidence was insufficient to convict him of theft. The trial court ruled it did not have discretion to hear the motion because it was not filed within 30 days. The court sentenced defendant to 150 days in the Champaign County jail with credit for one day served.

¶ 23        On March 8, 2010, defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 24        In April 2010, defendant appealed, arguing his case should be remanded for a hearing on

his posttrial motion because the trial court erroneously believed it did not have discretion to hear the motion, or in the alternative, (1) the evidence was insufficient to prove he committed theft beyond a reasonable doubt, and (2) reversible error occurred when a witness was permitted to narrate the contents of the surveillance video. *People v. Sykes*, 2011 IL App (4th) 100261-U. This court remanded, directing the trial court to exercise its discretion and determine whether to entertain defendant's posttrial motion. *Sykes*, 2011 IL App (4th) 100261-U, ¶ 26. In December 2011, the trial court denied defendant's posttrial motion.

¶ 25    This appeal followed.

## II. ANALYSIS

¶ 27    On appeal, defendant argues (1)(a) reversible error occurred when (i) the testimony of the State's only witness violated the silent witness theory because the witness was allowed to narrate the contents of a video played for the jury and (ii) the error was further magnified by the prosecutor's improper closing argument; or (b) in the alternative, defendant received ineffective assistance of counsel because counsel failed to object to the improper testimony or closing argument therein; and (2) the evidence was insufficient to prove defendant committed theft beyond a reasonable doubt.

## A. Plain Error

### 1. *Standard of Review*

¶ 30    The admission of evidence is ordinarily within the sound discretion of the trial court; however, whether it was proper for the State's witness to narrate the contents of a video when he had no personal knowledge of the events portrayed on the video is a legal issue which does not require an exercise of discretion, fact finding, or evaluation of credibility. Thus, we review this issue *de novo*. See *Jackson v. Reid*, 402 Ill. App. 3d 215, 237, 935 N.E.2d 978, 996 (2010) (trial court's initial determination on whether a particular statement constitutes hearsay is subject to *de novo* review).

¶ 31    The plain-error doctrine set forth in Illinois Supreme Court Rule 615(a) (Ill. S. Ct. R. 615(a)) provides a narrow exception to the general rule of forfeiture. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009).

> "Under the plain-error doctrine, this court will review forfeited challenges when: (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) a clear or obvious error occurred, and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Taylor*, 2011 IL 110067, ¶ 30, 956 N.E.2d 431.

The defendant has the burden of persuasion under both prongs of the plain-error analysis. *People v. Lewis*, 234 Ill. 2d 32, 43, 912 N.E.2d 1220, 1227 (2009). Prior to determining whether plain error occurred, however, we first determine whether error occurred at all. *Id*. If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied. *People v. Sargent*, 239 Ill. 2d 166, 189-90, 940 N.E.2d 1045, 1059 (2010).

¶ 32                    2. *Silent Witness Theory*

¶ 33    Defendant first asserts reversible error occurred because the testimony of the State's only witness violated the silent witness theory. Specifically, defendant contends plain error resulted when Thuney testified about the contents of the surveillance video because (1) Thuney did not have personal knowledge of the events depicted on the video; (2) the DVD was independent, substantive evidence which should "speak for itself"; and (3) Thuney's improper narration of the video–based on Thuney's observations of the purportedly clearer, original VHS surveillance tape which was not in evidence–invaded the province of the jury because it allowed him to give lay opinion on the ultimate issue where he was in no better position to view the video than the jury.

¶ 34    Under the silent witness theory, videotapes may "be introduced as substantive evidence so long as a proper foundation is laid." *Taylor*, 2011 IL 110067, ¶ 32, 956 N.E.2d 431. Under this theory, it is not necessary for a witness to testify to the accuracy of the images depicted in the video so long as the accuracy of the process used to produce the evidence is established with an accurate foundation. *Id.* (citing Jordan S. Gruber, *Foundation for Contemporaneous Videotape Evidence*, *in* 16 Am. Jur. Proof of Facts 3d 493, § 4, at 507 (1992)). This is so because the evidence is " 'received as a so-called silent witness or as a witness which "speaks for itself." ' " *Id.* (quoting Gruber, *supra*, § 5, at 508). In this case, defendant does not challenge the admission of the video as substantive evidence on foundational grounds; rather, defendant asserts Thuney's testimony regarding his observations from the original VHS recording he viewed on the VCR that recorded the video was inadmissible lay opinion testimony and invaded the province of the jury. We agree.

¶ 35    In considering the admissibility of lay witness opinion testimony, Illinois courts have referred to Rule 701 of the Federal Rules of Evidence. *People v. Novak*, 163 Ill. 2d 93, 102, 643 N.E.2d 762, 767 (1994). Rule 701 provides:

"If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) *rationally based on the perception of the witness*, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge ***." (Emphasis added.) Fed. R. Evid. 701.

(Although not in force at the time of defendant's trial, effective January 1, 2011, Illinois adopted Illinois Rule of Evidence 701, which is identical to Federal Rule of Evidence 701.) Additionally, Rule 704(a) of the Federal Rules of Evidence provides, "testimony in the form of an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." (Emphasis added.) Fed. R. Evid. 704. (Illinois has subsequently adopted an identical rule in Illinois Rule of Evidence 704(a) (eff. Jan. 1, 2011).)

¶ 36    Our supreme court stated, "[Rule 704(a)] excludes opinion testimony of a lay witness 'wherever inferences and conclusions can be drawn by the jury as well as by the witness ***.' " (Emphasis omitted.) *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton*, 108 Ill. 2d 217, 221, 483 N.E.2d 524, 526 (1985) (quoting 7 John Wigmore, Evidence § 1917, at 10 (Chadbourn rev. ed. 1978)). The Indiana Supreme Court has opined, "It should be clear that

if a photograph [or video] is admissible as substantive evidence because 'it speaks for itself,' a witness' opinion as to what it is saying not only does not address itself to evidentiary competence but invades the province of the jury." *Groves v. State*, 456 N.E.2d 720, 723 (Ind. 1983). The Kentucky Supreme Court recently held even when a video is introduced through the testimony of a witness with personal knowledge of the events, the witness may only testify about his personal recollection of the event and may not simply interpret the events depicted on the video. *Childers v. Commonwealth*, 332 S.W.3d 64, 74 (Ky. 2010).

¶ 37   In this case, Thuney did not have firsthand knowledge of the events depicted on the video, *i.e.*, he only viewed the video at the end of the day, hours after the incident. The State cites numerous cases which have allowed lay opinion testimony regarding events the witness observed from surveillance video. However, these cases are distinguishable.

¶ 38   In *People v. Starks*, 119 Ill. App. 3d 21, 25, 456 N.E.2d 262, 265 (1983), cited by the State, this court relied on Federal Rule of Evidence 701 and found no error where the trial court admitted testimony from several correctional officers who identified defendants involved in a prison riot after viewing a videotape of the riot. The officers were familiar with the defendants and had seen the defendants they identified on many occasions prior to the riot. *Id*. at 26, 456 N.E.2d at 265. Additionally, the defendants were in the background of the video, making it difficult for the jurors to make identification, whereas the officers were familiar with the defendants' mannerisms and body movements, making it easier for them to identify the defendants than for the jurors. *Id*., 456 N.E.2d at 266. We concluded the officers' testimony "was rationally based upon the witnesses' personal knowledge of the defendants before the occurrence and their perception of what they saw in the videotapes. It was an aid to the jury in resolving the issue of identification and did not invade the province of the jury." *Id*.

¶ 39   In *People v. Owens*, 394 Ill. App. 3d 147, 154, 914 N.E.2d 1280, 1286 (2009), we reiterated our holding in *Starks* as follows: "identification testimony of a lay witness who has no personal knowledge of the events depicted on the tape itself is admissible where (1) the witness has personal knowledge of the defendant before the occurrence and (2) the testimony aids the trier of fact in *resolving the issue of identification* and does not invade the jury's fact-finding duties." (Emphasis added.) In this case, Thuney did more than simply identify defendant as the person depicted on the video. Thuney testified in watching the video he saw defendant remove money from the register and he saw defendant put his hand containing the money in his left pocket.

¶ 40   In *State v. Thorne*, 618 S.E.2d 790, 795 (N.C. Ct. App. 2005), also cited by the State, the court found no abuse of discretion in admitting the police captain's testimony regarding the contents of a videotape he had viewed on several occasions prior to the police department losing the video. The court reasoned the officer had experience in electronic and technical surveillance and had been trained to notice different mannerisms and characteristics of people. *Id*. Moreover, the officer had observed the defendant's gait in the past, observed the gait of the person depicted on the video, and perceived the two gaits to be similar. *Id*. As in *Starks*, *Thorne* is distinguishable from the instant case because the testimony in *Thorne* related only to the identification of the defendant, whereas here, Thuney went far beyond identifying defendant. Additionally, the *Thorne* videotape was no longer available, but in the

instant case, a copy of the video was available and published to the jury. In *State v. Buie*, 671 S.E.2d 351, 355 (N.C. Ct. App. 2009), the North Carolina Court of Appeals held the trial court erred in allowing the detective to narrate and offer his opinion about events depicted in two poor quality surveillance videos of which he had no personal knowledge and, thus, his testimony invaded the province of the jury.

¶ 41 In *United States v. Meling*, 47 F.3d 1546, 1556-57 (9th Cir. 1995), a 9-1-1 operator and a paramedic testified the defendant feigned grief over his wife's poisoning even though the emergency call was played in full. However, the 9-1-1 operator's testimony was based on her perception of the defendant's agitation during her live conversation with the defendant, and the paramedic responded to the emergency call and "had ample time to form the impression that [the defendant] was feigning grief." *Id*. at 1556-57. In *People v. Tharpe-Williams*, 286 Ill. App. 3d 605, 610, 676 N.E.2d 717, 720 (1997), witnesses testified regarding events they observed on a video monitor as the events were occurring, rather than on a recorded videotape at the end of the day as is the case here. In *People ex rel. Sherman v. Cryns*, 327 Ill. App. 3d 753, 761-62, 763 N.E.2d 904, 912 (2002), the plaintiff described, in its brief, the defendant's actions during the delivery of a child–events which were also videotaped. The court opined, "Stating what one believes a videotape shows is no different from expressing an opinion regarding what a photograph in evidence depicts." *Id*. at 762, 763 N.E.2d at 912. "In each instance the opposing party can also express its opinion regarding the nature and context of the exhibit." *Id*. In this case, however, Thuney did more than simply state his opinion as to what the video published to the jury entailed; rather, he testified about what he saw and gave his opinion based on the original, purportedly clearer video not played for the jury.

¶ 42 Last, the State cites *United States v. Begay*, 42 F.3d 486, 503 (9th Cir. 1994), which held it was not error to allow a police officer to narrate events depicted on a videotape played for the jury even though the officer was not present at the crime scene when the events occurred. However, the videotape in *Begay* depicted the actions of approximately 200 demonstrators and the ensuing violence, making it difficult for the jury to see, in one viewing, details the officer noticed after spending over 100 hours viewing the video. *Id*. Additionally, the court noted, "[t]o have the jury [spend more time viewing the video] would be an extremely inefficient use of the jury's and the court's time." *Id*. Unlike the video in *Begay*, the video in this case is only approximately three minutes in duration and defendant is the only person portrayed in the video. The only issue the jury needed to determine was whether defendant removed money from the cash register. Thuney was in no better position, based on the video admitted into evidence and published to the jury, to determine whether defendant removed money from the register, and, thus, his opinion testimony invaded the province of the jury.

¶ 43                                  3. *The State's Improper Closing Arguments*

¶ 44 Next, defendant asserts Thuney's improper testimony was further magnified during the State's improper closing argument when the prosecutor told the jury it could rely on Thuney's testimony regarding his observations of the original VHS videotape as well as facts not in evidence.

¶ 45    During closing arguments, a "prosecutor may comment on the evidence and any fair, reasonable inferences it yields." *People v. Nicholas*, 218 Ill. 2d 104, 121, 842 N.E.2d 674, 685 (2005). A court will reverse a judgment because of improper closing arguments only if the defendant identifies remarks made by the prosecutor that were (1) improper and (2) so prejudicial that real justice was denied or the jury may have reached its verdict because of the error. *People v. Evans*, 209 Ill. 2d 194, 225, 808 N.E.2d 939, 956 (2004). Defendant asserts the prosecutor went beyond commenting on the evidence or reasonable inferences therein by arguing facts not in evidence. See *People v. Barraza*, 303 Ill. App. 3d 794, 797, 708 N.E.2d 1256, 1258 (1999) ("The prosecutor may comment on a witness's credibility only if the remarks are fair inferences from the evidence.").

¶ 46    Specifically, the prosecutor admitted the quality of the DVD was "not wonderful" but argued Thuney watched the clearer VHS on which "you can see the defendant take the money, put it in his hand, put it in his pocket and walk away." The prosecutor stated, "we can't quite see the dollar bill in [defendant's] hand, *** but again we have circumstantial evidence that allows us to know that it was a hundred dollars, in whatever form." Further, defendant argues Thuney's credibility was improperly bolstered when the prosecutor stated, "You know, Bergner's doesn't pad [Thuney's] pockets the more people he catches, okay?" Defendant asserts no evidence was introduced regarding Thuney's pay structure so it is unknown whether Thuney receives bonuses based on the number of thieves caught. The State responds the prosecutor's isolated remark Thuney had no financial incentive to accuse defendant of theft was invited by defense counsel's statement during closing argument, "Unless Mr. Thuney has x-ray vision, I don't care how good quality that [original VHS] was, you could not see what was happening on [defendant's] left side."

¶ 47    "It is well established that a prosecutor may respond to comments made by defense counsel that invite a response and may comment on credibility. [Citations.] To determine whether a prosecutor's comment is proper, courts must view such comment in context of the entire closing argument. [Citation.]" *People v. Theis*, 2011 IL App (2d) 091080, ¶ 53, 963 N.E.2d 378. Challenging a witness's credibility may invite a prosecutor to respond, but it does not give the prosecutor *carte blanche* to make up evidence during closing argument. See *People v. Rivera*, 277 Ill. App. 3d 811, 820-21, 661 N.E.2d 429, 434-35 (1996) (reversible error occurred when the prosecutor, in response to defense counsel attacking the credibility of a State witness, argued the witness was putting his life at risk by testifying because the defendant was a known gang member when no evidence was presented the witness feared for his life). In *People v. Adams*, 2012 IL 111168, ¶ 16, 962 N.E.2d 410, the prosecutor made the following comments to the jury during closing argument:

    " 'What also doesn't make sense is that [Sergeant] Boers would plant these drugs on the defendant. We are talking about 0.8 grams of cocaine. If you believe what the defendant is saying, then you also have to believe that [Sergeant] Boers is risking his credibility, his job, and his freedom over 0.8 grams of cocaine.

    And not only is Boers doing that, but [Deputy] Schumacher is doing that as well. He's also risking his life–his job and his freedom and his reputation over 0.8 grams of cocaine.' "

In rebuttal, the prosecutor again stated "believing defendant required the jury to believe that 'these officers are risking their jobs for this, over 0.8 grams of cocaine.' " *Id.*, 962 N.E.2d 410. While finding the prosecutor's remarks did not amount to plain error, our supreme court held the remarks were impermissible speculation because "no evidence was introduced at trial from which it could be inferred that the testifying officers would risk their careers if they testified falsely." *Id.* ¶ 20, 962 N.E.2d 410.

¶ 48　In this case, not only did the prosecutor rely on Thuney's improper lay opinion testimony regarding the original VHS, but the prosecutor also informed the jury Bergner's does not pay Thuney based on the number of thieves he catches and therefore Thuney had no reason to lie, implying the jury can believe Thuney because he had no ulterior motive. As in *Rivera* and *Adams*, the prosecutor's argument in this case was improper speculation because no evidence was presented regarding Thuney's pay structure. Further, when the prosecutor's comment is viewed in the context of the entire closing argument, Thuney's testimony and credibility were improperly bolstered by the comment.

¶ 49　　　　　　　　　　　　　　4. *Reversible Error Occurred*

¶ 50　Having found (1) it was error for Thuney to offer lay opinion testimony based on events of which he had no personal knowledge (2) which was further compounded by the prosecutor's improper statements during closing arguments, we must now determine whether these errors rise to the level of plain error, such that reversal of defendant's conviction is the appropriate remedy.

¶ 51　Defendant argues had it not been for Thuney's improper lay opinion testimony and the prosecutor's improper closing argument, he would not have been found guilty. Further, defendant contends the reliance on the improper evidence made his trial fundamentally unfair. Thus, defendant asserts the plain-error standard has been met under either prong.

¶ 52　We first consider whether the first prong of the plain-error doctrine has been satisfied. In doing so, we must consider whether the outcome of defendant's trial may have been affected by Thuney's improper testimony coupled with the State's improper closing argument. In order to find plain error, the evidence must be "so closely balanced that the error alone severely threatened to tip the scales of justice against him." *People v. Herron*, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005). The *Herron* court noted:

"If the defendant carries the burden of persuasion and convinces a reviewing court that there was error and that the evidence was closely balanced, the case is not cloaked with a presumption of prejudice. *The error is actually prejudicial, not presumptively prejudicial*. We deal with probability, not certainties; we deal with risks and threats to the defendant's rights. *When there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person*." (Emphases added.) *Id*. at 193, 830 N.E.2d at 483.

¶ 53　The State argues Thuney's narration based on his viewing of the original VHS did not prejudice defendant because the jury had the opportunity to view the DVD and the prosecutor emphasized it was charged with evaluating the images on the DVD and was free to disagree with anyone else's interpretation. The record directly refutes this. The actual quote by the

-11-

prosecutor is, "[defense counsel's] interpretation of the DVD, doesn't matter, just as *** mine doesn't matter. [What matters] is what each one of you thinks and what each one of you saw and *what each one of you heard from Mr. Thuney.*" (Emphasis added.) Further, the prosecutor informed the jury it could rely on Thuney's testimony because he viewed the original, clearer VHS during which Thuney clearly saw defendant take the money from the register.

¶ 54    The trial court instructed the jury, "The evidence which you should consider consists only of the testimony of the witnesses and the exhibit which the court has received." Further, the court informed the jury,

"Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in this case.

*** Closing arguments are made by the attorneys to discuss the facts and circumstances in the case, and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement made by the attorneys which is not based on the evidence should be disregarded."

¶ 55    In this case, the evidence is closely balanced. If not for Thuney's improper testimony concerning events of which he had no personal knowledge and comments made by the State during closing arguments which improperly bolstered Thuney's testimony, the jury may not have convicted defendant. In fact, the State argued "if Mr. Thuney hadn't watched [the original VHS] the day, December 20th, maybe we wouldn't know as well what happened, but thankfully he did watch it, and he remembers." Our review of the DVD supports this statement. The quality of the DVD is poor and upon viewing it, this court was unable to ascertain whether defendant actually removed anything from the register, let alone $100. Whether defendant removed $100 from the cash register was an issue of fact to be decided by the jury. Thuney was in no better position to ascertain this fact based on the evidence introduced at trial than the jury because his opinion was not "rationally based on [his] perception" of the events as they occurred, and therefore his opinion testimony was "not otherwise admissible." See Fed. R. Evid. 701, 704(a).

¶ 56    We recognize the trial court properly instructed the jurors they "are the judges of the believability of the witnesses" and "any statement made by the attorneys which is not based on the evidence should be disregarded." If the sole issue before this court was whether the State's closing arguments amounted to plain error, the outcome may have been different. However, this is not the sole issue before this court. Thus, we find the improper lay opinion testimony coupled with the State's improper closing arguments resulted in plain error under the closely balanced prong of the analysis.

¶ 57    Because we hold plain error occurred under the first prong of the plain-error analysis, we need not address whether defendant can satisfy the second prong. We reverse defendant's conviction.

¶ 58                                 B. Ineffective Assistance of Counsel

¶ 59      Because we find plain error occurred, we need not address whether defendant received ineffective assistance of counsel.


¶ 60                                 C. Sufficiency of the Evidence

¶ 61      Last, defendant asserts he should not be subjected to another trial because the remaining evidence presented by the State was insufficient to prove him guilty of misdemeanor theft beyond a reasonable doubt. "Generally, a decision to remand a cause for a new trial alleviates the need to address other issues; however, the constitutional guarantee prohibiting double jeopardy requires that we consider defendant's challenge to the sufficiency of the evidence." *People v. Strong*, 316 Ill. App. 3d 807, 815, 737 N.E.2d 687, 693 (2000).

¶ 62      When the sufficiency of the evidence for a criminal conviction is in dispute, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is not the appellate court's function to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Furby*, 138 Ill. 2d 434, 455, 563 N.E.2d 421, 430 (1990). For a reviewing court to set aside a criminal conviction on grounds of insufficient evidence, the evidence submitted must be so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Rowell*, 229 Ill. 2d 82, 98, 890 N.E.2d 487, 496-97 (2008).

¶ 63      To prove a crime was committed beyond a reasonable doubt, the State must prove (1) a crime occurred, *i.e.*, the *corpus delicti*, and (2) the crime was committed by the defendant. *Sargent*, 239 Ill. 2d at 183, 940 N.E.2d at 1055. "Circumstantial evidence is sufficient to sustain a criminal conviction, provided that such evidence satisfies proof beyond a reasonable doubt of the elements of the crime charged." *People v. Hall*, 194 Ill. 2d 305, 330, 743 N.E.2d 521, 536 (2000). Defendant argues the State did not meet its burden of proving a crime was committed. We agree.

¶ 64      To prove defendant guilty of theft beyond a reasonable doubt, the State was required to prove defendant knowingly obtained unauthorized control over Bergner's property and intended to deprive Berger's permanently of the use or benefit of the property. See 720 ILCS 5/16-1(a) (West 2008); see also Illinois Pattern Jury Instructions, Criminal, No. 13.01 (4th ed. 2000). However, the State failed to prove Bergner's was missing property over which defendant could have obtained unauthorized control.

¶ 65      The State cites *Furby* for the proposition the evidence introduced at trial was sufficient to establish the *corpus delicti* of the theft. *Furby*, 138 Ill. 2d at 445-46, 563 N.E.2d at 425. In *Furby*, the restaurant owner had personal knowledge there was nearly $400 in his desk drawer when he left the restaurant for the day. *Id.* at 451, 563 N.E.2d at 428. Further, the

-13-

owner in *Furby* also testified the restaurant's receipts totaled $658, thus establishing approximately $1,058 should have been in his desk at the close of business. *Id*. at 441, 563 N.E.2d at 423.

¶ 66 Defendant asserts, and we agree, this case is more similar to *People v. Bennett*, 152 Ill. App. 3d 762, 763-64, 505 N.E.2d 41, 42 (1987), where the Third District Appellate Court found the State failed to prove the *corpus delicti* of the offense. In *Bennett*, the defendant was charged with misdemeanor theft for taking money from a roll of bills which allegedly should have contained $100. *Id*. at 762-63, 505 N.E.2d at 41. However, the store manager could not testify from personal knowledge whether the roll of money ever actually contained $100 or how much money was, or should have been, in the store's safe. *Id*. at 763-64, 505 N.E.2d at 42. Further, the store manager admitted the missing money could have been in a cash register or the person bundling the bills could have miscounted. *Id*., 505 N.E.2d at 41. Additionally, she testified at least eight other people had access to the safe. *Id*., 505 N.E.2d at 42.

¶ 67 In this case, Thuney testified Bergner's policy was to leave $200 in the cash register overnight as a starting fund for the next day during the holiday season and on busy days. However, unlike *Furby*, Thuney did not have personal knowledge as to whether the register actually started with $200, or if he did he did not testify as such, nor did he testify the policy was consistently followed. Additionally, the State failed to present testimony from any other witness who either prepared the starting fund the night before or had personal knowledge the register contained $200 when the store opened. While Thuney "became aware" the cash register was $100 short, the State presented no evidence to show how the alleged discrepancy was brought to Thuney's attention. As part of his investigation into the alleged loss, Thuney reviewed the register tape but the register tape was not introduced into evidence, nor did Thuney testify the register tape showed the cash register was short. Moreover, as in *Bennett*, five or six other employees had access to the same cash register throughout the day.

¶ 68 The only actual evidence submitted in this case to establish a crime occurred was the DVD. As mentioned previously, this court reviewed the DVD and the quality is so poor this court was unable to ascertain whether defendant actually removed anything from the register, let alone $100. Viewing the evidence in the light most favorable to the prosecution, we find no rational trier of fact could have found defendant guilty beyond a reasonable doubt. The evidence in this case is so unsatisfactory as to create reasonable doubt a crime was committed at all, much less defendant committed it.

¶ 69                                III. CONCLUSION

¶ 70 For the reasons stated, we reverse defendant's conviction.

¶ 71 Reversed.