NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210273-U

NO. 4-21-0273

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 2, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| BILLY D. LEWIS, | ) | No. 20CF1329 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jason M. Bohm, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err by admitting the description of the incident on the
surveillance video by a State witness who lacked firsthand knowledge of the
incident, and the court's preliminary inquiry into defendant's *pro se* ineffective
assistance of counsel claims was adequate.

¶ 2    In November 2020, the State charged defendant, Billy D. Lewis, by information

with one count of aggravated battery (720 ILCS 5/12-3.05(c) (West 2020)). In February 2021,

the State filed a second count of aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2020)).

After a March 2021 jury trial, the jury found defendant guilty of both charges. Defense counsel

filed a motion for acquittal or, in the alternative, a motion for a new trial, arguing, *inter alia*, the

trial court erred by allowing the State's witness Brandon Smith-LaGrone, to testify regarding

what was contained in the surveillance video that Smith-LaGrone had not witnessed firsthand.

At a joint April 2021 hearing, the Champaign County circuit court denied defense counsel's

motion and sentenced defendant to eight years' imprisonment. Thereafter, defendant filed *pro se* a motion alleging ineffective assistance of counsel. In May 2021, the court conducted an inquiry under *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). It found the appointment of new counsel was not warranted and denied defendant's claims.

¶ 3        Defendant appeals, asserting the trial court erred by (1) allowing Smith-LaGrone to narrate the contents of a surveillance video when he had no personal knowledge of the events in the video and (2) failing to conduct an adequate *Krankel* inquiry into defendant's ineffective assistance of counsel claim regarding a conflict of interest. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        The November 2020 aggravated battery charge alleged defendant, while on or about the parking lot of the C-U At Home (Home), a public way, knowingly caused bodily harm to Ricky Shivers, in that defendant struck Shivers on or about the head and arms with a pipe. See 720 ILCS 5/12-3.05(c) (West 2020). The February 2021 aggravated battery charge alleged defendant, while using a metal pipe, a deadly weapon, knowingly caused bodily harm to Shivers, in that he struck Shivers on or about the head and arms with a metal bar or pipe. See 720 ILCS 5/12-3.05(f)(1) (West 2020).

¶ 6        Before trial, defendant filed a "Motion for Bar Association Attorney." In the motion, defendant argued, *inter alia*, the following:

> "3. That, presently public defender's [*sic*] are assigned to a Court-room
> [*sic*] rather than a Defendant, and Consequently, a Change of Courtroom or judge
> disrupts any Continuity of defense or tactics, also where a Conflict of interest
> occurs between the Defendant and the Champaign County Public Defender's
> office[ ] Defendant must be given an attorney outside of the Champaign County

public Defender's office to have a fair representation on his particular matter. *People v. Smith*, 230 N.E.2d 169 (Ill. 1967)."

Defendant also filed *pro se* an *ex parte* motion raising allegations of ineffective assistance of counsel. On January 28, 2021, the trial court held a hearing on defendant's *pro se* motions. The court described the motions and defendant's allegations and informed defendant it would be holding a "*Krankel* hearing" on his claims against his attorney. The court allowed defendant to explain his complaints against trial counsel. The court asked some follow up questions about defendant's statements and asked defendant if there was anything else he wanted to say about his motions. Defendant replied in the negative, and the court asked some questions of defense counsel. The court also asked for defendant's criminal history. The matter of a conflict of interest was never specifically addressed. At the conclusion of the hearing, the court denied defendant's *pro se* motions.

¶ 7 In March 2021, the trial court held a jury trial on the charges. The State presented the testimony of (1) Smith-LaGrone, a Home employee; (2) Corey Barnes, a Champaign police officer; and (3) Shivers, the victim. Defendant did not present any evidence. Only the evidence relevant to the issues on appeal follows.

¶ 8 Smith-LaGrone testified the Home provided resources and assistance to the less fortunate and, at night, was a homeless shelter for men. He explained the Home's parking lot was for the public and anyone could drive up to the Home. Around 8:15 p.m. on November 22, 2020, Smith-LaGrone was inside the Home working when he learned of an altercation in the parking lot. He went outside and observed Shivers had an open wound on his left arm. Smith-LaGrone knew Shivers who, at that time, had been coming to the Home for six months. Smith-LaGrone also knew defendant, who had a nickname of G-Rock. Smith-LaGrone had

known defendant for seven months. Defendant was not present when Smith-LaGrone observed Shivers's injury.

¶ 9     When the police arrived, they asked if the Home had a surveillance video. Smith-LaGrone testified the Home had nine security cameras and he could observe video from those cameras on a monitor. At the time of the incident, the surveillance system was working properly. Smith-LaGrone was able to locate the incident on the surveillance video system. When the prosecutor asked Smith-LaGrone to describe what he saw on the video, defense counsel objected. The trial court overruled the objection and allowed Smith-LaGrone to testify what he observed on the video. He described the incident and identified the participants. Smith-LaGrone did not know how to transfer a copy of the surveillance video to the police, so he recorded the surveillance video on the monitor with his cellular telephone (cellphone). Smith-LaGrone e-mailed the video from his cellphone to his work e-mail, and then he e-mailed the video from his work e-mail to the police. Smith-LaGrone admitted he did not provide the police with a video of the entire incident because the file was too big to be e-mailed. Smith-LaGrone recorded only "the pertinent details." When the prosecutor sought admission of the surveillance video, defense counsel objected. The court overruled the objection, and the prosecutor played the video, which was 59 seconds long. Smith-LaGrone identified defendant, Shivers, and Adam Brant, a bystander, on the video.

¶ 10     After hearing the parties' arguments, the jury found defendant guilty of both counts of aggravated battery. In March 2021, defendant filed *pro se* a posttrial motion asserting (1) the State's evidence was insufficient to prove defendant guilty beyond a reasonable doubt, (2) the trial court erred by allowing the State to impeach defendant with his prior conviction for criminal damage to property which resulted in defendant deciding not to testify, (3) the court

erred by allowing Smith-LaGrone to testify about what was depicted in the surveillance video, (4) the prosecutor improperly influenced the witnesses by pointing defendant out in the surveillance video multiple times, (5) the court erred by admitting the video because Smith-LaGrone tampered with it, and (6) the court erred by denying defendant's motions for a directed verdict. Defense counsel filed a timely posttrial motion raising the same claims.

¶ 11　　　　In April 2021, the trial court held a joint hearing on defense counsel's posttrial motion and sentencing. The court first denied defendant's posttrial motion and then sentenced him to eight years' imprisonment for aggravated battery on a public way. Thereafter, defendant filed *pro se* a motion for ineffective assistance of counsel, asserting trial counsel's performance was deficient for not objecting to prosecutorial errors. The motion also asserted he should be appointed counsel outside the public defender's office.

¶ 12　　　　On May 7, 2021, the trial court held a *Krankel* inquiry. The court began by asking defendant about his concerns regarding defense counsel. After defendant voiced his concerns about defense counsel's representation of him, the court then asked defendant if there were any other issues, and defendant replied in the negative. The court did not specifically ask about a conflict of interest. After hearing defendant's complaint, the court found no basis for ineffective assistance of counsel.

¶ 13　　　　On May 7, 2021, defendant filed his timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). Accordingly, this court has jurisdiction of defendant's conviction and sentence under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 14　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　　　　　　　　　A. Surveillance Video

¶ 16    Defendant first asserts the trial court erred by allowing Smith-LaGrone to narrate the contents of the surveillance video when he had no personal knowledge of the events portrayed in the video. Defendant acknowledges Smith-LaGrone could provide lay opinion identification testimony because he was familiar with defendant, Shivers, and others seen in the video. However, defendant appears to object to Smith-LaGrone's description of what he observed on the video beyond the people's identity in establishing the foundation for the admission of the surveillance video. The State contends the court did not err because Smith-LaGrone's testimony was based on his perception of the video, and if the court did err, the error was harmless. In reply, defendant argued the testimony was inadmissible as a matter of law and the error was not harmless. The parties disagree as to the appropriate standard of review, and thus we first address that issue.

¶ 17                    1. *Standard of Review*

¶ 18    Citing this court's decision in *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 30, 972 N.E.2d 1272, defendant asserts the *de novo* standard of review applies. In *Sykes*, 2012 IL App (4th) 111110, ¶ 30, this court recognized the admission of evidence generally lies within the trial court's sound discretion but found whether it was proper for the State's witness to narrate the contents of a video when he had no personal knowledge of the events portrayed on the video was a legal issue that did not require an exercise of discretion, fact finding, or evaluation of credibility. The State disagrees and contends the abuse of discretion standard applies. The State cites the supreme court's decision in *People v. Thompson*, 2016 IL 118667, ¶ 49, 49 N.E.3d 393, which provided, "[a] court reviews the trial court's decision to admit lay opinion identification testimony under an abuse of discretion standard." In his reply brief, defendant clarifies he is challenging as a matter of law the admissibility of Smith-LaGrone's testimony regarding only

- 6 -

the events depicted on the video and not the identification of the individuals in the video. Since defendant is raising a question of law, our review is *de novo*. See *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 15, 82 N.E.3d 856.

¶ 19                                                2. *Merits*

¶ 20          Defendant contends the trial court erred by allowing Smith-LaGrone to testify to what he observed on the video. He identifies the following testimony:

> "I observed G-Rock pull Mr. Shivers out into the middle of the parking lot there, the public parking lot that we discussed. I don't know if he struck him a few times, then went and got the metal object, and then came back and Mr. Shivers threw his arm up and he—"

The aforementioned testimony occurred before the surveillance video was played for the jury and while the prosecutor was laying the foundation for the video. Smith-LaGrone testified defendant was known as G-Rock. As previously noted, defendant does not challenge Smith-LaGrone's identification of the individuals seen in the video. Defendant notes Smith-LaGrone had no personal knowledge of the events in the video, and thus he was in no better position than the jury to determine what the video portrayed. In support of his argument, he cites this court's decision in *Sykes*, 2012 IL App (4th) 111110, ¶ 42, where this court found the State's witness's testimony regarding what he observed on a surveillance video was improper because it invaded the province of the jury.

¶ 21          In *Sykes*, 2012 IL App (4th) 111110, ¶ 6, a loss-prevention officer, who had no firsthand knowledge of the incident, was allowed to testify to the contents of a surveillance video depicting the defendant committing a theft. The jury was then shown a blurry copy of the video, and the loss-prevention officer described what he had seen on the original video that was clearer.

- 7 -

*Sykes*, 2012 IL App (4th) 111110, ¶ 9.  The court found the testimony invaded the province of the jury because the only issue the jury needed to determine was whether the defendant removed money from the cash register, as shown in the blurry video introduced into evidence, and the loss-prevention officer was in no better position to make that determination than the jury.  *Sykes*, 2012 IL App (4th) 111110, ¶ 42.

¶ 22    However, as the State notes,  this court decided *Sykes* before our supreme court's decision in *Thompson*, 2016 IL 118667.  In *Thompson*, 2016 IL 118667, ¶¶ 39, 55, the supreme court addressed (1) the admissibility of lay opinion identification testimony under Illinois Rule of Evidence 701 (eff. Jan. 1, 2011) and (2) whether and under what circumstances law enforcement officers may provide identification testimony.  After determining those issues, the court then addressed the admissibility of the testimony of five witness, four of which were law enforcement officers.  See *Thompson*, 2016 IL 118667, ¶¶ 61-65.

¶ 23    One of the law enforcement officers was Deputy Jason Stewart, who testified he was dispatched to Hamson Ag, where he reviewed and copied recordings made by a surveillance camera after observing the caps of three tanks containing anhydrous ammonia had been removed. *Thompson*, 2016 IL 118667, ¶ 8.  The supreme court described the rest of his testimony as follow:

> "Stewart testified that the surveillance video showed a white male who had short, dark hair, with a balding or thinning spot on the back of his head, a large forehead and receding hairline, and who was wearing a gray cut-off T-shirt and black baggy pants.  Stewart described how, in the video, the man was carrying a five-gallon bucket and a green soda bottle with a clear hose attached.  Stewart testified that, based on his training and experience, a soda bottle attached to a hose

- 8 -

is commonly used to steal anhydrous ammonia. Stewart then stated that, in the video, the subject walked in front of the tanks, out of view, and then a few seconds later walked back into view. The subject then walked between two of the tanks, sat the bucket down, and then climbed onto the tire of one of the tanks. Thereafter, the subject emerged from between the tanks carrying the bucket and soda bottle with the hose and ran off.

Stewart testified he did not recognize the male, but circulated the video via the departmental computer and gave a copy to Chief Deputy William Sandusky to distribute to other counties and agencies. Stewart also made a color still image from the video and circulated that to various agencies. The color still image was marked as exhibit No. 2 at trial." *Thompson*, 2016 IL 118667, ¶¶ 8-9.

After Deputy Stewart's testimony, the State played the surveillance video for the jury. *Thompson*, 2016 IL 118667, ¶ 10.

¶ 24 The supreme court found Deputy Stewart's testimony was admissible and not lay opinion identification testimony. *Thompson*, 2016 IL 118667, ¶ 61. It found his testimony merely laid the evidentiary foundation for the admission of the video and the still image made from the video. *Thompson*, 2016 IL 118667, ¶ 61.

¶ 25 In *People v. Brown*, 2017 IL App (1st) 142197, ¶ 56, 82 N.E.3d 148, the defendant argued the detective's testimony regarding the contents of a surveillance recording was inadmissible lay opinion identification testimony. The defendant challenged both the detective's identification of the defendant and the detective's narration of the surveillance recording. *Brown*, 2017 IL App (1st) 142197, ¶ 56. The reviewing court put aside the detective's identification testimony and found the detective's "perceptions did not need to be

based on the live event at the store because he was not providing an eyewitness account; rather, his testimony was relevant to the scenes depicted in the recording." *Brown*, 2017 IL App (1st) 142197, ¶ 62. The court noted the detective needed to have perceived only the recording. Citing *Thompson*, 2016 IL 118667, ¶¶ 8,61, the reviewing court further found the detective's testimony merely laid an evidentiary foundation for admission of the surveillance recording. *Brown*, 2017 IL App (1st) 142197, ¶ 62.

¶ 26    First, we find *Sykes* distinguishable from the case before us because the loss-prevention officer's testimony regarding what was depicted in the clearer video, which was not admitted into evidence, was not foundational testimony for the admission of the blurry surveillance video that was admitted into evidence. In this case, the State was laying the foundation for the admission of the surveillance video when Smith-LaGrone gave the challenged testimony. His testimony was regarding the video shown to the jury. Thus, under *Thompson* and *Brown*, Smith-LaGrone's testimony about the events on the surveillance video was admissible. Second, the jury could have disregarded Smith-LaGrone's testimony about what he had observed and relied on its own observations of the video. As such, Smith-LaGrone's testimony did not invade the province of the jury. See *Thompson*, 2016 IL 118667, ¶ 54 (noting that, if lay identification testimony is properly admitted, "it would not invade the province of the jury because the jury is free to reject or disregard such testimony and reach its own conclusion regarding who is depicted in the surveillance recording"). Accordingly, the trial court did not err by allowing Smith-LaGrone to testify about the events depicted in the surveillance video despite his lack of firsthand knowledge.

¶ 27                              B. *Krankel* Inquiry

¶ 28    Defendant also asserts the trial court failed to conduct an adequate *Krankel*

inquiry into his claim of ineffective assistance of trial counsel and the cause should be remanded for an adequate *Krankel* hearing. The State disagrees.

¶ 29  A *pro se* posttrial claim alleging ineffective assistance of counsel is governed by the common-law procedure developed by our supreme court in *Krankel* and refined by its progeny. *People v. Roddis*, 2020 IL 124352, ¶ 34, 161 N.E.3d 173. "The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal." *Roddis*, 2020 IL 124352, ¶ 34. Under the supreme court's procedures, the circuit court does not automatically appoint counsel when a defendant presents a *pro se* posttrial claim alleging ineffective assistance of counsel. *Roddis*, 2020 IL 124352, ¶ 35. Rather, the court first examines the factual basis of the defendant's claim. *Roddis*, 2020 IL 124352, ¶ 35. It does so by conducting some type of inquiry into the underlying factual basis of the defendant's *pro se* ineffective assistance of counsel claim. *People v. Ayres*, 2017 IL 120071, ¶ 11, 88 N.E.3d 732. "Specifically, the trial court must conduct an adequate inquiry ***, that is, inquiry sufficient to determine the factual basis of the claim." (Internal quotation marks omitted.) *Ayres*, 2017 IL 120071, ¶ 11. In doing so, the court considers the merits of defendant's allegations in their entirety. *Roddis*, 2020 IL 124352, ¶ 61.

¶ 30  If the trial court determines the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* claim. *Roddis*, 2020 IL 124352, ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Roddis*, 2020 IL 124352, ¶ 35. New counsel can then independently evaluate the defendant's claim and avoid the conflict of interest trial counsel would have in trying to justify his or her own actions contrary to the defendant's position. *Roddis*, 2020 IL 124352, ¶ 36. New counsel also represents the defendant at the hearing on the

*pro se* ineffective assistance of counsel claim. *Roddis*, 2020 IL 124352, ¶ 36.

¶ 31 Whether the trial court conducted an adequate *Krankel* inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel presents a legal question that we review *de novo*. *People v. Jackson*, 2020 IL 124112, ¶ 98, 162 N.E.3d 223. When the court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, this court will reverse that determination only if the circuit court's action was manifestly erroneous. *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 32 Here, defendant contends the trial court did not conduct an adequate inquiry into defendant's claim a conflict of interest existed between him and the Champaign County Public Defender's Office. The State argues the trial court conducted an adequate inquiry into defendant's allegations and no error occurred. It notes defendant raised the exact same claim in his pretrial motion for a bar association attorney, on which the trial court held a hearing. In his reply brief, defendant contends the court did not question defendant about the conflict of interest during its hearing on defendant's pretrial motions.

¶ 33 The paragraph of defendant's posttrial motion for ineffective assistance of counsel at issue in this argument is the following:

> "10. Presently public defender's [*sic*] are assigned to a Courtroom rather than a Defendant, and Consequently, a change of the Courtroom, Judge or prosecutor disrupts any Continuity of defense or tactics, Also where a Conflict of Interest occurs between the Defendant and the Champaign County public Defender's office.
>
> Defendant must be given an Attorney outside of the Champaign County

public Defender's office to have fair representation on his particular matter.

*People v. Smith*, 230 N.E.2d 169 (Ill. 1967)."

Defendant's pretrial motion for a bar association attorney contained an almost identical paragraph.

¶ 34　　　In both his pretrial motion for a bar association attorney and his posttrial motion for ineffective assistance of counsel, defendant cites with his suggestion of a conflict of interest the supreme court's decision in *People v. Smith*, 37 Ill. 2d 622, 230 N.E.2d 169 (1967), *overruled by People v. Banks*, 121 Ill. 2d 36, 44, 520 N.E.2d 617, 621 (1987).  The *Smith* decision addressed whether a conflict of interest existed when an attorney from the public defender's office had to represent a defendant on a postconviction petition that asserted ineffective assistance of counsel at trial by another attorney in the public defender's office. *Smith*, 37 Ill. 2d at 624, 230 N.E.2d at 170.  The court found a conflict of interest existed because of the natural inclination to protect the public defender's reputation by defending against the charges of incompetency and the duty as an advocate to aid the defendant in establishing the veracity of the incompetency charges.  *Smith*, 37 Ill. 2d at 624, 230 N.E.2d at 170.  The supreme court found that conflict of interest situation should be avoided, and the trial court should appoint the defendant counsel other than the public defender to represent him on the postconviction petition.  *Smith*, 37 Ill. 2d at 624, 230 N.E.2d at 170.  Later, in *Banks*, 121 Ill. 2d at 44, 520 N.E.2d at 621, the supreme court overruled *Smith* and found that, when an assistant public defender asserts another assistant from the same office rendered ineffective assistance of counsel, the court should conduct a case-by-case inquiry to determine whether any circumstances peculiar to the case indicate the presence of an actual conflict of interest.

¶ 35　　　Given his citation to *Smith*, defendant's contention was he needed new counsel

outside the public defender's office because, *inter alia*, he had ineffective assistance of counsel claims against his assistant public defender and an attorney outside the public defender's office was warranted to avoid the conflict of interest described in *Smith*. We disagree with defendant his motion for ineffective assistance of counsel asserted an actual conflict of interest existed between him and his assistant public defender. Since defendant was suggesting a conflict of interest created by the situation of a member of the public defender's office asserting an ineffective assistance of counsel claim against another member of the office, the trial court's inquiry about defendant's ineffective assistance of counsel claims was sufficient for the court to examine any factual basis for his request for an attorney outside the public defender's office. Accordingly, we find the trial court did conduct an adequate *Krankel* inquiry.

¶ 36                            III. CONCLUSION

¶ 37          For the reasons stated, we affirm the judgment of the Champaign County circuit court.

¶ 38          Affirmed.